AURORA HILL CON. MIN. Co. *v.* 85 MINING Co. *et al.*

(*Circuit Court, D. Nevada.* April 18, 1888.)

1. MINES AND MINING—ACQUISITION—ANNUAL EXPENDITURE.
    An applicant for a patent to a mining claim, who has made final entry, paid the purchase money for the land embraced in the survey of the claim, and has obtained his certificate of purchase therefor, is not obliged to continue the annual expenditure upon the claim required by section 2324, Rev. St., pending final decision upon his application, and issuance of patent.
2. SAME—CERTIFICATE OF PURCHASE.
    An entry and certificate of purchase, so long as they remain uncanceled, are equivalent to a patent, so far as the rights of third parties are concerned.
3. SAME—LOCATION WITHOUT PRIOR ENTRY.
    A mining location made without prior right of entry upon the ground is void. There can be no valid location made without prior right of entry. Location confers no right of entry where such right did not previously exist.
4. SAME—GENERAL LAND-OFFICE—COLLATERAL ATTACK OF DECISION.
    The decisions of department officers upon questions of law or fact are not subject to collateral attack. Upon questions of fact their decisions are conclusive upon all parties; upon questions of law their decisions can only be reviewed in a proper case made in a direct proceeding for that purpose. Evidence is not admissible, in an action at law, to show error in the decision of an officer of the land department upon any matter submitted to such officer for his decision.
5. SAME—EJECTMENT—TITLE TO MAINTAIN.
    Generally, any person vested with immediate right of possession can maintain ejectment. As against a trespasser, prior possession will support the action. As to mining claims, possessory title is sufficient. Rev. St. § 910.
6. SAME—CONVERSION OF ORE—MEASURE OF DAMAGES.
    Rule adopted in this case.

(*Syllabus by the Court.*)

At Law.

*R. M. Clarke,* for plaintiff.

*A. C. Ellis,* for defendants.

Before SABIN, District Judge.

SABIN, J. This is an action of ejectment, brought to recover possession of a certain mining claim, known as the "Prospectus" claim or mine, containing 1,500 feet along the lode or vein, by 200 feet in width, situate in Esmeralda mining district, Esmeralda county, Nev., together with damages in the sum of $10,000 for ores alleged to have been removed therefrom, and converted by defendants to their own use. The mining claim is particularly described in the complaint by metes and bounds, according to the United States official survey thereof. The plaintiff is a corporation, organized under the laws of the state of California, and engaged in mining in said Esmeralda mining district. The defendants are

citizens and residents of the state of Nevada. The case was tried before the court, a jury having been waived, in writing, by the respective parties. The undisputed facts in the case are simple. On March 12, 1877, Edward T. Greeley duly located the mining grounds in controversy, and entered into possession of the same. Prior to 1880, he conveyed the same to his brother, James L. Greeley, who took possession thereof, and continued to work and develop the mine. In June, 1880, James L. Greeley bonded the mine to H. G. Blasdel, who then took possession thereof, and continued the work thereon. August 19, 1880, Greeley made application in due form at the local land-office, in the proper land district, for a patent to the mine. The usual and necessary proceedings were had under this application for patent by Greeley, and on November 20, 1880, he made final proof of entry, and paid the purchase money for the land embraced in the survey of said claim, and received from the officers of said land-office the usual certificate of purchase issued in such cases; which entry and certificate are now in full force and effect, uncanceled, and unrevoked. No adverse claim or protest was filed in the land-office to the issue of a patent for any part of the claim for which patent was sought. The proceedings in the local land-office being regular in all respects, and those officers being satisfied with the proofs submitted, they, on November 20, 1880, forwarded the papers in the case to the commissioner of the general land-office, at Washington, for final action. The papers transmitted, as appears from the records of the local land-office, were: (1) Application for patent; (2) plat of survey; (3) field-notes; (4) proof of posting notice and diagram on claim; (5) certified copy of notice of location; (6) affidavit of citizenship; (7) certified copy of district mining laws; (8) agreement of publisher; (9) register's certificate of posting in office; (10) proof that plat and notice remained on claim during 60 days of publication; (11) clerk's certificate of no suit pending; (12) proof of publication; (13) affidavit of $500 improvements; (14) statement of fees and charges; (15) register's final certificate of entry; (16) receiver's receipt. From subsequent correspondence it would seem that these papers were duly received at the general land-office, at Washington. On February 1, 1882, the commissioner of the general land-office, by letter of that date, notified the register and receiver of the district land-office that he required further proof of the posting of the notice and plat on the claim during the 60-days period of publication. This proof was not furnished, and in 1885, and again in 1886, the commissioner again called upon the register for this additional proof. In response thereto, in January 1887, H. G. Blasdel submitted his affidavit, as agent for said Greeley, showing the posting of said notice and plat on the claim for the requisite time, which affidavit was duly forwarded to the commissioner. In 1886, and after the commencement of this action, defendants filed in the office of the commissioner a protest against the issue of a patent to Greeley, or his successors in interest, for said claim, alleging that the plat and notice were not posted on said claim for the period by law required. Thereafter the commissioner fixed a day for hearing further proof as to the posting of said plat and notice, before the officers

of the local land-office, which hearing has not yet been had.    After Blasdel's entry upon the claim in June, 1880, he continued work and improvements thereon, and on about October 20, 1880, he paid to Greeley the purchase money for the claim, and received from him a deed of conveyance of the same.    As Greeley had made application for patent for the claim, it was understood between him and Blasdel that proceedings thereunder should continue for the benefit of Blasdel or his successors in interest.    By mesne conveyances the title to the claim passed to plaintiff in August, 1881, when it took possession thereof, and continued work thereon, expending several hundreds of dollars in developing and improving the mine, and extracting ore therefrom.    Plaintiff continued in possession of the mine during the years 1881, 1882, and 1883, working upon and improving the same.    Little, if any, work was done on the mine in the year 1884 by plaintiff, and none in the year 1885.    During the year 1884, and until the mine was taken possession of by defendants, plaintiff maintained upon the claim its tracks, cars, shops, etc., and the survey posts set by the United States surveyor when surveyed by him for patent.    At no time had or has it abandoned said claim or mine, or ceased in its efforts to obtain patent therefor.    It is not questioned that plaintiff's grantors had expended more than $500 in work and improvements on the claim prior to application for patent, or that plaintiff during the years 1881, 1882, and 1883, annually expended upon said claim at least $100, if not more.    It is admitted by plaintiff that he did no work thereon in the year 1884.    On the 1st of January, 1885, the grantors of defendants, together with some of the defendants in person, relocated said mine, referring to it by name in their notice of location, and renamed it the "85 Mine."    Their notice of relocation of the mine was duly recorded, and under it they entered upon the same, and commenced work thereon.    They have retained possession of the same to the present time, and, until the commencement of this action, had annually expended more than $100 in work upon the mine, and have extracted and removed from it more than 500 tons of ore, of the net value of $2.50 per ton.

Defendants contend that the mine became and was subject to relocation at the date of their attempted relocation thereof, by reason of the failure of plaintiff to do the annual work thereon required by section 2324, Rev. St. U. S.    It is conceded that more than one year had elapsed from the date of the last work done on the mine by plaintiff, in 1883, to the date of defendants' relocation thereof.    It is upon this contention of defendants that the rights of the parties in this action depend.    I am not aware that this question of plaintiff's obligation to continue the annual expenditure of $100 upon the claim pending his application for a patent has ever been judicially decided.    If such is the case, I have not found, nor have I been cited to, such decision.    It has, however, been ruled upon, and decided adversely to defendants, both by the commissioner of the general land-office, and by the secretary of the interior department; and by each of them in a manner so able, strong, and just as to require but little to be further said in support of their conclusions and decisions.

Both of these officers hold that after entry and payment of purchase money for the mine, the applicant is not required to expend any further sum of money upon the mine, pending the final decision upon his application, and the issue of patent. I fully concur in the opinions by these officers expressed upon this question, and, without quoting from them *in extenso*, refer to them as the true and correct construction of the law applicable thereto. The commissioner's decision will be found in Sickels, Min. Dec. (1881,) pp. 384–392, rendered Sept. 26, 1878; that of the secretary of the interior, Id. pp. 377–383, rendered March 4, 1879. The same conclusion is intimated by Acting Commissioner Armstrong, at page 373, Id. In the opinion of the secretary above referred to (page 383) he says:

"The true rule of law governing entries of the public land, to which mineral land forms no exception, is that, when the contract of purchase is completed by the payment of the purchase money and the issuance of the patent certificate by the authorized agents of the government, the purchaser at once acquires a vested right in the land, of which he cannot be subsequently deprived if he has complied with the requirements of the law prior to entry, and the land thereupon ceases to be a part of the public domain, and is no longer subject to the operation of the laws governing the disposition of the public lands. In such cases there is part performance of a contract of sale, which entitles the purchaser to a specific performance of the whole contract, without further action on his part. When the proofs are made, and the purchase money paid, the equitable title of the purchaser is complete; and the patent, when issued, is evidence of the regularity of the previous acts, and relates to the date of entry, to the exclusion of all intervening claims. In short, an entry made is in all respects equivalent to a patent issued, in so far as third parties are concerned. In support of these views, I cite the following adjudicated cases: *Carroll* v. *Safford*, 3 How. 441; *Landes* v. *Brant*, 10 How. 348; *Lessees of French* v. *Spencer*, 21 How. 240; *Witherspoon* v. *Duncan*, 4 Wall. 218; *Frisbie* v. *Whitney*, 9 Wall. 187; *Irvine* v. *Irvine*, Id. 617; *Barney* v. *Dolph*, 97 U. S. 652; 5 Cruise, Dig. 510, 511. As the doctrine is firmly established that, where several concurrent acts are necessary to make a conveyance, the original act shall be preferred, and all subsequent acts shall have relation to it, it is held that an entry made is equivalent to a patent issued, within the meaning and intent of section 2324, Rev. St."

In addition to the above authorities we cite: *Wirth* v. *Branson*, 98 U. S. 118; *Deffeback* v. *Hawke*, 115 U. S. 392, 6 Sup. Ct. Rep. 95; *Mining Co.* v. *Dangberg*, 2 Sawy. 451–455; *Milling Co.* v. *Spargo*, 8 Sawy. 645, 16 Fed. Rep. 348. We need not discuss this proposition further. If any proposition of law can be deemed settled we think this is. The decisions of the commissioner and secretary have stood unchallenged as to their correctness by the courts or legislative action for nearly 10 years. They may properly be said to have become rules of property, regulations under and by which property and the rights thereto are secured and protected.

The mining interests of the country are of great moment and value. The mode of acquiring title thereto should be by fixed and certain procedure, not subject to capricious change. Sections 2324–2326, Rev. St., were enacted in 1872. They were amended in certain particulars in 1880, and again in 1882. It can hardly be supposed that congress

was not aware of the construction placed upon sections 2324 and 2325 by the department especially charged with their execution; and if such construction had not been agreeable to legislative will and sanction, those sections would have been amended so as to correct, for the future, any erroneous construction thereof theretofore made.   We are therefore justified in concluding that this construction has the legislative sanction. Section 2324 provides solely for maintaining a possessory title by the annual expenditure of work or improvements on the claim.   Section 2325 has an entirely different purpose—that of investing title absolute in the applicant for patent.   When he has complied with the requirements of this section, made his entry, and obtained his certificate of purchase, his obligations cease, and nothing more by way of consideration is required of him.   He may be required to make further proof upon any matter not satisfactorily established, but these things are matters of detail, not of consideration.   There is no ambiguity in section 2325, unless we annex to it the conditions prescribed in section 2324 for maintaining an entirely different title, which we have no authority to do. It was suggested, upon the argument of this case, that possibly this court had ruled upon this question in the case of *Mining Co.* v. *Brown*, 10 Sawy. 243, 21 Fed. Rep. 167, and adversely to the present opinion of the court.   We think not.   In that case the court said: "A claimant of mining ground, until he has secured patent therefor, must be an actor, and must annually perform the work required thereon; and in establishing his right thereto must show compliance with the law in this respect." This, we think, is wholly correct, and not in conflict with our judgment in this case.   This language was used, and is to be understood, as applied to the facts in that case.   That was an action brought upon a protest filed to an application for a patent, upon an adverse claim.   In that action neither party claimed anything under section 2325, but each sought to establish its and his right to certain mining ground by showing compliance with the provisions of section 2324; and the action was dismissed solely upon the ground that neither party had shown any compliance with the provisions of that section.   Neither party had secured a patent, or anything equivalent thereto, nor did they claim so to have done.   In the case at bar, plaintiff, through its grantors, has surely "secured a patent," or its equivalent, so long as the entry and certificate of purchase are uncanceled.

At the trial of this case, defendants offered evidence to show that the plat and notice were not posted on the claim during the time by law required.   This was objected to by plaintiff's counsel as wholly inadmissible.   As the case was heard without a jury, the court admitted the evidence, subject to be stricken out, if upon deliberation it should be deemed inadmissible.   The evidence offered on this point was in nowise satisfactory, but it was wholly rejected from consideration.   It was in nowise admissible for any purpose in the case, and could not be considered. By law the officers of the land department are charged with the whole business of transferring the government title to public land, and they are exclusively charged with that duty.   Within the sphere of their duty

their decisions upon questions of fact are conclusive upon all parties. ·They may, like other officers, err in regard to matters of law, and the correct interpretation thereof. In such cases, upon proper proceedings had for that purpose, their judgments or decisions may be reviewed by the courts, and corrected, if erroneous. This can only be done by a direct proceeding for that purpose, upon proper allegations disclosing the fraud, mistake, or other matter complained of, but in no case can their decisions upon questions of fact submitted to them for decision be collaterally attacked in an action at law. It would be a strange anomaly were it otherwise, and productive of endless confusion in public affairs. If the courts could interfere with the action of the land department in cases before it for decision there would be an end to the orderly conduct of business in that department. And there might be presented the strange spectacle of two tribunals, at the same time, hearing and deciding the same case, arriving at opposite conclusions,—one tribunal, created especially for the purpose, and given jurisdiction and power to hear and decide the case; the other exercising an assumed jurisdiction, with no power or authority to control the action or judgment of the former. *Johnson* v. *Towsley*, 13 Wall. 72; *Marquez* v. *Frisbie*, 101 U. S. 473; *Quinby* v. *Conlan*, 104 U. S. 420; *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. Rep. 389; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Baldwin* v. *Stark*, 107 U. S. 463, 2 Sup. Ct. Rep. 473; *Shepley* v. *Cowan*, 91 U. S. 330. ·· It was further urged that this being an action at law, recovery could be had only upon the legal title. This position cannot be maintained. Section 910, Rev. St., provides for this class of cases:

"No possessory action between persons, in any court of the United States, 'for the recovery of any mining title, or for damage to any such title, shall be affected by the fact that the paramount title to the land in which such mines lie is in the United States; but each case shall be adjudged by the law of possession."

As a general rule, any person vested with the right of immediate possession to realty may maintain ejectment. As against a trespasser without color of title, prior possession will support the action. In *Christy* v. *Scott*, 14 How. 292, the court say:

"But a mere intruder cannot enter on a person actually seized, and eject him, and then question his title, or set up an outstanding title in another. The maxim that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, is applicable to all actions for the recovery of property. But if the plaintiff had actual prior possession of the land, this is strong enough to enable him to recover it from a mere trespasser who entered without any title. He may do so by writ of entry, where that remedy is still practiced, (*Jackson* v. *Railroad Corp.*, 1 Cush. 575;) or by an ejectment, (*Allen* v. *Rivington*, 2 Saund. 111; *Doe* v. *Reade*, 8 East, 356; *Doe* v. *Dyeball*, 1 Moody & M. 346; *Jackson* v. *Hazen*, 2 Johns. 438; *Whitney* v. *Wright*, 15 Wend. 171;) or he may maintain trespass, (*Catteris* v. *Cowper*, 4 Taunt. 548; *Graham* v. *Peat*, 1 East, 246.)"

See, also, *Campbell* v. *Rankin*, 99 U. S. 261; Sedg. & W. Tr. Title Land, §§ 185, 718 *et seq.* Defendants were trespassers—mere intruders—upon plaintiff's lawful possession when they attempted to relocate this mine.

Having no right to enter upon that possession, they could initiate no right in themselves by their attempted relocation of the mine. The right to locate, or relocate, a mining claim depends upon the right to enter upon the land where the mine is situated at the time the location is made. Without such right of entry the location is void. Location confers no right of entry unless such right of entry existed at the date of location. *Belk* v. *Meagher*, 104 U. S. 279. The testimony of the defendants shows that while in the possession of this mine they extracted and removed therefrom 553 tons of ore, which they converted to their own use. The same testimony shows the net value of this ore to have been about $2.50 per ton in the mine, allowing for extracting and reduction. There is evidence in the case which might bring the measure of damages within the severer rule laid down in *Wooden-Ware Co.* v. *U. S.*, 106 U. S. 432, 1 Sup. Ct. Rep. 398. It is in evidence, undisputed, that plaintiff, by its well-known agent, remonstrated with defendants and denied their right to locate the mine or work upon the same, or remove ore therefrom, and constantly asserted plaintiff's rights. And finally, plaintiff was compelled to bring this action to dispossess defendants. I have, however, adopted the measure above indicated, allowing the defendants the cost of extraction and reduction, *non constat*, however, but that plaintiff could have extracted and reduced this ore at less expense than it was done by defendants.

There must be judgment for plaintiff for possession of the mining ground described in the complaint, together with the sum of $1,382.50 damages for ores removed and converted, and for costs of this action, and it is so ordered.