LAST CHANCE MIN. CO. et al. v. TYLER MIN. CO.[1]

(Circuit Court of Appeals, Ninth Circuit. April 9, 1894.)

No. 123.

1. MINING CLAIMS—ABANDONMENT OF PART OF LOCATION.
   When the vein passes out through one of the side lines of the claim, the locator may abandon all the ground beyond that point by drawing a new end line across the claim parallel to the original end line, although he has previously made a survey and application for a patent. Mining Co. v. Sweeney, 4 C. C. A. 329, 54 Fed. 284, followed.
2. SAME—PRIORITY OF LOCATION—JUDGMENT AS EVIDENCE.
   In a suit to determine the right of possession as between two overlapping mining claims, the defendant withdrew its answer in open court, and judgment was entered for plaintiff, reciting the priority of its location. Defendant thereafter abandoned a portion of its claim, including

[1] Rehearing pending.

the portion embraced in the judgment. *Held* that, in a subsequent action between the same parties in respect to ground not embraced in that judgment, the judgment was not admissible as evidence of priority of location.

3. SAME—EJECTMENT—EVIDENCE — RECEIVER'S RECEIPT AND REGISTER'S CERTIFICATE.

In a suit to determine the right of possession as between two mining claims, defendant withdrew its answer, judgment was rendered against it, and thereafter it abandoned a portion of its location, including the ground in dispute, and amended its application for a patent accordingly. A receiver's receipt and register's certificate of entry were then issued for the remaining part of the location. *Held* that, as this ground was not involved in any controversy, the receiver and register of the land office had authority and jurisdiction to issue these documents, and the same were admissible as evidence of title in a subsequent action of ejectment. Mining Co. v. Rose, 114 U. S. 576, 5 Sup. Ct. 1055, distinguished.

4. SAME.

The validity of the receipt and certificate, and their effect as evidence of title, were not affected, as against third parties, by the fact that the locator, on abandoning a portion of his claim, did not have the government surveyor make a new survey, for which reason the land office suspended the issuance of a patent until an amended official survey was furnished.

5. SAME—PRIORITY OF LOCATION—HOW PROVED.

When, in following the dip of a vein, the owners of two claims come in conflict, priority of right is determined by priority of location; and, where a patent issued to one of the parties is silent as to the date of location, the same may be proved by testimony aliunde.

In Error to the Circuit Court of the United States for the District of Idaho.

This was an action of ejectment by the Tyler Mining Company against the Last Chance Mining Company and others to recover possession of certain mining ground. At the first trial there was a verdict and judgment for defendant, but the judgment was reversed by this court. Mining Co. v. Sweeney, 4 C. C. A. 329, 54 Fed. 284. The case has again been tried, resulting in a verdict and judgment for plaintiff. Defendants bring error.

W. B. Heyburn, for plaintiffs in error.

John R. McBride and Albert Allen, for defendant in error.

Before McKENNA, Circuit Judge, and KNOWLES and HAWLEY, District Judges.

HAWLEY, District Judge. This is an action of ejectment brought by the defendant in error to recover the possession of certain mining ground, situated in Yreka mining district, Shoshone county, Idaho, claimed by the defendant in error. The case has been twice tried. The first trial resulted in a verdict in favor of the Last Chance Company. The judgment then rendered in the case was reversed by this court for "errors in the rulings of the court with reference to the conclusiveness of the judgment in the territorial court as to the priority of the Last Chance location." Mining Co. v. Sweeney, 4 C. C. A. 329, 54 Fed. 284. The case was thereafter tried upon its merits, and resulted in a verdict and judgment in favor of the Tyler Company.

In the discussion of this case we shall call the plaintiffs in error the "Last Chance," and the defendant in error the "Tyler." Many of the facts were fully stated in the former opinion of this court,

but it is necessary, in order to convey a correct understanding of the positions now taken by counsel for the Last Chance, to briefly restate some of them. The Tyler mining claim was located on the 20th day of September, 1885, claiming 1,500 feet in length and 600 feet in width. On the 19th day of April, 1887, the Tyler applied for a patent. The Last Chance in due time protested, and brought suit in the territorial court of Idaho to determine the right of possession to about one acre of surface ground in the triangular space represented by the diagram in the former opinion of this court. 4 C. C. A. 329, 54 Fed. 284. Before any verdict was rendered in that case, the Tyler withdrew its answer, and the Last Chance thereafter obtained a judgment for the surface ground within the triangle. After the Tyler withdrew its answer, it amended its application for a patent by leaving out from its description of the mining ground located by it the easterly 427 feet in length, and, there being no further contest, it entered the remainder of its claim, and received the receiver's receipt, and the register's certificate of entry from the proper land office, for the purchase price of the Tyler claim. The present action is for 1,072 feet of the westerly end of the Tyler ground, which was not in controversy in the suit in the territorial court. The judgment entered in the territorial court, after the Tyler had withdrawn its answer, recited the fact that the location of the Last Chance was made on the 17th day of September, 1885. Upon the second trial, in the United States circuit court, the Last Chance offered the judgment roll in the territorial court in evidence, and the court refused to admit the same for any purpose. It is claimed that such refusal was error.

The contention of counsel for the Last Chance is that, although the judgment in the territorial court is not conclusive of the fact as to the priority of the Last Chance location under the former decision of this court, it should have been admitted as prima facie or persuasive evidence of such fact; that it was also admissible for the purpose of proving an admission on the part of the Tyler of the allegation of the complaint of the Last Chance; that it was further admissible for the purpose of showing that, at the time the receiver's receipt and register's certificate of final entry of the Tyler were issued, an adverse suit against the application of the Tyler for a patent was pending and undetermined. It is true that the former opinion of this court was simply to the effect that the judgment was not conclusive as to the date of the Last Chance location, as that was the only question then presented; but the reasons given for the conclusion reached apply with equal force to the questions now presented. It was expressly stated that "the judgment was conclusive only as to the right of possession to the triangular piece of ground involved in that suit, no portion of which is in controversy" in this action.

The admissibility of the judgment for any purpose rests wholly upon the question as to the right of the Tyler to voluntarily abandon its claim to any part of its ground after it had made a survey and application for a patent to the entire ground embraced in its location. The right of the Tyler to draw a line leaving out over

427 feet of the easterly end of its claim, as described in its original application for a patent, whatever its purpose may have been in so doing, has been adjudicated, settled, and determined by the decision of this court. No fraud was committed by the Tyler in making the change in the boundaries. It did not take any ground that was not included in its original location. It did not include any ground that belonged to, or was claimed by, any one else. It did not interfere with any other location. It gained no additional rights to those it previously had. It simply waived and abandoned its rights to the easterly 427 feet of its location and, by so doing, it forfeited no rights it then had to the balance of the ground embraced within the limits of its location. The lode located by the Tyler in its true course lengthwise crossed the southerly side line of the location at a point distant 427 feet from the easterly end line of the Tyler location. It could not follow the lode lengthwise beyond the point where it crossed its side line. It abandoned its right to the surface ground beyond that point, and drew its easterly end line parallel with its location at that point, so as to only include the ground in which the lode extended lengthwise within the side lines of its location. No valid reason has been advanced by counsel, and we are not aware of any, why the end line of the claim could not be thus changed in order to comply with the laws of the United States requiring the end lines to be parallel. The law itself would make the end line at that point, so far as any extra lateral rights to follow the lode in its downward course were involved.

It is not shown, and was not attempted to be shown, that the Tyler made any admission in the territorial court in relation to the date of the location of the Last Chance claim, or of the priority of its location. The Tyler was not a party to the judgment, and is not bound in this action by any recitations made in the judgment as to the date of the Last Chance location. If any admission was made in the answer of the Tyler as to the date of such location, of its priority to the Tyler, that fact might have been admissible in this case. But no such proof was offered. The answer of the Tyler was not made a part of the judgment roll in the territorial court. In view of these facts, it is unnecessary to review the authorities cited by counsel as to the admissibility of judgments in other suits between the same or other parties as persuasive evidence of the facts therein involved, or of admissions therein made. It is enough to say that they have no application whatever to the facts of this case.

With reference to the question as to the admissibility of the judgment for the purpose of showing that the receipt and certificate of the Tyler were issued without authority of law, and to the other objections made against the admissibility and effect of the receipt and certificate as evidence, it may be said that it is wholly immaterial to the right of the Tyler to recover in this case whether the receipt and certificate were valid or invalid. The fact is that the Tyler introduced evidence, oral and documentary, as to the discovery, location, marking the lines of the location, notice, performance of necessary work, showing in every respect a full compliance with

the provisions of the mining law. Its title to the ground described in its complaint is undisputed, without reference to the receipt and certificate. We are, however, of opinion that the court did not err in admitting the receipt and certificate of entry, or in its instructions as to the effect thereof. The receipt and certificate were not issued until after the Tyler had withdrawn its answer, and abandoned its claim to that portion of the ground which was involved in the suit in the territorial court, no part of which is included in the mining ground for which the receipt and certificate were given. It therefore necessarily follows that the receiver and register of the land office had the power, authority, and jurisdiction to issue the same. In Rose v. Mining Co., 17 Nev. 26, 27 Pac. 1105; Mining Co. v. Rose, 114 U. S. 576, 5 Sup. Ct. 1055,—cited and relied upon by counsel for the Last Chance, a controversy was pending in the state court to determine the title to the identical ground for which the patent was issued, and it was, of course, held that the patent was absolutely null and void, because it was issued without authority of law. Here the receipt and certificate which entitle the Tyler to a patent were issued for certain mining ground that was not involved in any controversy then pending in any court. The facts in the cases are totally dissimilar. A careful examination of the Rose-Richmond Case will disclose the fact that it expressly recognizes the right of a party to waive or abandon his rights to a portion of the claim that might be involved in a similar controversy to the one presented in the suit between these parties in the territorial court. Mining Co. v. Rose, 114 U. S. 585, 5 Sup. Ct. 1055.

The other objections urged by counsel against the admissibility of the receipt and certificate of entry in evidence relate to certain alleged irregularities on the part of the Tyler not having a resurvey made of its ground after abandoning the 427 feet. A regular survey had been made in the first instance, by a government surveyor, of the entire ground embraced in the Tyler location. The Tyler, when it abandoned the 427 feet, did not have the government surveyor make a new survey, and the officers of the land office expressed the opinion that the Tyler should have the line officially surveyed, and gave notice by letter "that an amended survey of the claim as entered, approved by the United States surveyor, must be furnished." This action upon the part of the officers did not affect the validity of the receipt and certificate of entry that had been previously issued by them. It simply amounted to a question of the regularity of the procedure on the part of the land office. It was not a matter which deprived the officers of jurisdiction. The issuance of a patent was merely suspended until the amended survey was officially approved. The patent would then issue upon the receipt and certificate of entry already given. There was no cancellation of these documents, and as long as they remained uncanceled they were, in legal effect, equivalent to a patent, at least so far as the rights of third parties were concerned. The receipt and certificate of purchase cannot be collaterally assailed upon

such grounds. Hamilton v. Mining Co., 33 Fed. 566; Aurora Hill Con. Min. Co. v. 85 Min. Co., 34 Fed. 515; Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U. S. 428, 12 Sup. Ct. 877, and authorities there cited. The court did not err in instructing the jury that "the defendant's (Tyler's) title to the surface ground of the premises described in this complaint is 1,072 feet along the Tyler mining claim established by the receipt of the receiver of the land office, dated April 22, 1889, and the accompanying certificate of entry, and that title relates back to the date of the original location, as may be found by the jury when the discovery was made and the claim designated by stakes and monuments on the ground; in other words, that title dates back to the location of the Tyler, there being no dispute as to the date of its location."

Objection is made that the notice of location of the Tyler claim was not recorded within the time required by the statutes of Idaho. Gen. Laws, p. 264, § 6. The statutes of Idaho provide that the notice placed upon the claim, or a substantial copy thereof, shall be recorded by the deputy appointed for the district within a specified date. The court permitted the Tyler to prove, against the objection of the Last Chance, that the notice of location of the Tyler was, on the 3d day of October, 1885, within the time specified in the statute, delivered to the deputy recorder of the district, with the request that it be recorded, and that the fees for recording the same were then paid. The deputy failed to make any indorsement upon the notice, but upon the 9th of October, 1885, it was duly recorded in the office of the county recorder. There is no controversy as to the facts. The contention of the Last Chance is that the recording of the notice could only be proved by the record or by an exemplification thereof. It is well settled that the leaving of a notice with the proper officer, with a request to have it filed and recorded, and the payment to him of the legal fees therefor, in the eye of the law constitutes a filing of the paper for record. The rights of a party, in this respect, cannot be defeated by the failure or neglect of the officer to perform his duty. But the question whether or not the notice was recorded in time was properly withdrawn from the consideration of the jury, upon the ground that the Tyler had what was equivalent to a title by the receipt and certificate, and this cured the irregularity, if there was any, in the recording of the notice of location.

Was the patent of the Last Chance conclusive as to the date of the location of the Last Chance claim? At the close of the testimony upon the part of the Tyler, counsel for the Last Chance "asked the court to pass on the fact of the patent for the Last Chance claim, as to its relation, and as to the matters and things conclusively adjudicated by it. The court at this time declined to pass upon this question, and stated that, under the decision of the appellate court, defendants would be required to prove their location, and that was a matter that might be controverted by testimony." The Last Chance thereupon, without objection, introduced witnesses who gave testimony tending to show the date of the discovery and location of the Last Chance claim, the staking of the claim, posting notice of

location, recording of notice, doing assessment work, survey for patent, etc. The Tyler introduced testimony in rebuttal upon these points, against the objections of the Last Chance. The testimony upon the part of the Last Chance tended to show that a valid location of the Last Chance claim was made on the 17th day of September, 1885, three days prior to the location of the Tyler. The testimony in rebuttal tended to show that no location of the Last Chance was made until after the Tyler was regularly located. The patent issued to the Last Chance was, of itself, evidence that the Last Chance lode had been discovered; that the location had been properly made; that it had been marked so that its boundaries could be readily traced; that the statutory requirements in respect to the posting of a notice and having it recorded had been complied with; that the necessary amount of work had been done; that the application for a patent, the notices given by the applicant, and all the other steps to acquire a patent, as required by law, had been regularly taken. Counsel for the Tyler admit that "the patent itself is evidence of all these facts, and, from its date upon its face, it is conclusive in a court of law of all these facts, because, without them, it could not lawfully issue. The patent is the final judgment and decree of the land department that the holder is the owner of the land it embraces, according to its terms, and in a court of law it is ironclad as title." It is therefore unnecessary to review the authorities upon this subject. The Tyler admits the validity of the Last Chance patent.

The controversy between the parties was as to the date when the location of the Last Chance was made. Was it prior or subsequent in time to the location of the Tyler claim? The patent does not, of itself, fix the date when the location was made. It is silent upon that subject. The respective claims adjoin each other on the surface. There is no conflict between them as to the surface ground. Both claims are valid, and both have the government title,—one, by patent; the other, by a receipt and certificate of entry from the United States land office, which, as before stated, is the substantial equivalent of a patent. The question of the priority of the locations is not involved in this case unless there was a controversy upon the facts as to whether the lode in question, in its true course lengthwise, passed through the ground of the Last Chance claim at nearly right angles. This court, in its former opinion, in answering the contention of counsel on this point, expressed its views of the law in relation to the rights of the respective parties upon the theory that the lode in question, in its true course lengthwise, crossed the side line of the Tyler claim, and passed through the Last Chance claim at nearly right angles. It is now claimed by the Tyler that the lode, in its course lengthwise, does not cross the side lines of the Last Chance at nearly right angles, as the dotted line of the foot wall of the lode on the diagram might seem to indicate; that the line, as thus drawn, followed the undulations of the ground on the surface, but that the underground developments clearly show that the location of the Last Chance claim was more along than across the lode.

The testimony upon this point is not contained in the record, and that question is not properly before us for review; but there is a map, which was made an exhibit in the case, which, upon this hearing, is filed in this court, on which are represented lines purporting to be a true representation of the testimony of the various witnesses as to the true course lengthwise of the lode through the Tyler and Last Chance claims. From these lines it appears that the location of the Last Chance was more along than across the lode. If this correctly represents the testimony that was given upon the trial, it was unnecessary for the court to instruct the jury as to the rights of the Last Chance upon the theory that the lode, in its true course lengthwise, crossed the side lines of the Last Chance at nearly right angles. If the true course of the lode lengthwise is more along than across the locations, then the mining law, to which we will hereafter have occasion to refer, determines the rights of the respective parties, independent of the date of their locations. The right of each party to follow the lode on its strike or true course lengthwise is terminated at the point where the lode crosses the side line of the Tyler and Last Chance locations; but each company would have the right to follow the lode, the top or apex of which is within its surface lines, on its dip, not upon its strike, upon a vertical plane drawn downward parallel to the end line, at the point where the strike of the lode ended; that is, at the point where the lode, in its lengthwise course, intersects the side lines of the claims. The Tyler would be entitled to all that portion of the lode that lies westerly of such vertical line drawn downward, and the Last Chance would be entitled to all that portion of the lode easterly of said line. But the court gave instructions to the jury to the effect that if they found from the evidence before them that the lode in its course lengthwise crossed the side lines of the Last Chance location at nearly right angles, and if they should also find, from other evidence, that "the Last Chance claim was the older, your verdict should be for the Last Chance Company; and, in this connection, I state to you that if you find that the Tyler was the older location, and find that it was following the ledge, as I have before explained to you, upon its dip and not upon its course, then you should find for the Tyler." Under this instruction, we are, perhaps, bound to assume that there was some evidence submitted to the jury which tended to show a state of facts that might have made it obligatory upon the jury to determine the question as to the priority of the locations in order to arrive at a proper verdict. Did the court err in allowing testimony as to the date of the Last Chance location? To what date does the title obtained by the patent relate? How is this question to be determined?

A patent to mineral land is to some extent different in its nature, character, and effect from a patent to agricultural land in this: that it does not give title to the ground vertically to the center of the earth. As a general rule, the mineral bearing veins and lodes depart from a perpendicular, in their course downward, so as to extend outside of the vertical side lines of the surface locations, and as it is the lodes and veins which constitute the principal value of mining locations,—without the discovery of which no valid location can be

made,—the law wisely provides that, upon compliance by the locators of mining claims with certain requirements mentioned in the statute, they "shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward, as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges." Rev. St. U. S. § 2322.

The title given by the patent follows this provision of the statute. It includes the surface ground embraced within the surface limits of the location. The title to this is absolute. It also includes the veins and lodes, the tops or apices of which lie inside of such surface lines, in their course downward, which, as before stated, often depart from a perpendicular so as to extend outside of the vertical side lines of the surface locations, and the patent, when issued, conveys the title to such portions of the veins or lodes, as well as to the portions thereof that lie within the limits of the surface location.

In the grants of specific lands to railroads and other corporations or companies, when the patent issues, it relates back to the date of the grant, which is made certain by the granting act. When a patent is issued for a mining claim, it relates back to the time when a valid location was first made, if it has been regularly kept up, and the date of such location, if the question of priority is raised, must, in the very nature of things, be determined by proof independent of the statute, unless the patent itself fixes the date. It does not depend upon the question as to which party made the first application for a patent, or which obtained a patent first. It is true that the patent is conclusive of the fact that, at the time the application therefor was made, the applicant had a valid location, and had, in all respects, fully complied with the requirements of the mining laws; but it does not fix the time when the location was made. In order to determine this question, it is necessary to introduce evidence independent of the patent. And, in such cases, as is said in Shepley v. Cowan, 91 U. S. 338, the first in time in the commencement of proceedings for the acquisition of the title, when the same are regularly followed up, is deemed to be first in right. The law provides when and how adverse claims to an application for a patent may be made; but such controversies are usually confined to conflicting claims as to the surface ground. When there is no conflict on the surface, there is ordinarily no necessity of a protest being made. Where the law does not require a protest to be made and an adverse suit to be brought to determine the right of possession before the patent issues, and a patent is regularly issued and thereafter a controversy arises as to the time when the patent takes

effect, and it is claimed that it relates back to the date of the location of the claim, that date, if material to the issues raised, must be established by evidence, in the same manner as any other question of fact not settled by the patent itself.

The right to a patent once vested is equivalent, so far as the United States government is concerned, to a patent issued. When issued, the patent relates back to the inception of the right of the patentee. Stark v. Starr, 6 Wall. 403. But where it is sought to make a patent relate back of the date when the application for the patent was made, and attach itself to some prior right, the facts showing such prior right must be established by proof.

In Henshaw v. Bissell, 18 Wall. 266, the court said that in a controversy "between parties claiming under two patents, each of which reserves the rights of other parties, the inquiry must extend to the character of the original concessions. The controversy can only be settled by determining which of these two gave the better right to the demanded premises." In Champion Min. Co. v. Consolidated, etc., Min. Co., 75 Cal. 78, 16 Pac. 513, the district court, in the trial of the case, proceeded upon the theory that the issuance of the patent was conclusive as to the date of the location of a mining claim as it appeared in the papers and proceedings filed in the United States land office upon which the patent was based. Upon appeal, the supreme court expressed its opinion in regard to this question, although it was not necessary to the determination of the case. The principles announced are, in our opinion, correct, and are applicable to the facts of this case. The court said:

"Where an application for a patent to mining land has been filed in the United States land office, and notice thereof given as required by statute, and no adverse claim has been filed, and the proceedings have regularly culminated in a patent, it may be said generally that the proceedings are conclusive against a third person as to those things with respect to which he might have filed an adverse claim. But, with respect to the united ledge which was afterwards discovered to be a union of the Wyoming and the Phillip, there was nothing in the application for a patent to the Wyoming claim which called for any contest by the owners of the Phillip. The application of the Wyoming claim, if granted, would result in a patent for only the surface ground claimed, and the ledges whose apexes were within it. If it should turn out that a ledge within that ground united with another ledge, the property of an adjoining owner, the ownership of the united ledge would have to be determined upon the principle of priority of location. Moreover, at the time of the Wyoming application and patent, the union of the two ledges at great depth in the earth was entirely unknown, and not even suspected. The owners of the Phillip ledge, therefore, with respect to the present claim to the united ledge, would and could not have had any standing in the land department as adverse claimants to the Wyoming application. It is therefore somewhat difficult to see how the question of priority of location between the Phillip and Wyoming ledges could be adjudicated in a proceeding in which the location of the Phillip ledge was not involved at all; or how ex parte proof, offered in the Wyoming application for the satisfaction of the United States government, is admissible in the case in bar, where the contest is about something not appearing on the face of that application, or involved in that proceeding."

### In Kahn v. Mining Co., 2 Utah, 188, the court said:

"As the location is the first step in the acquisition of mineral lands, and the foundation of the title thereto, the respondents, following the allegations

in their answer, put these location notices in evidence. They are not set out in the record, but, as chains of conveyances down to the patentees and respondents were put in evidence, it may be assumed that the respondents were not the locators, and, if not, then the connection between the patent and the location notice was not complete, even for the purposes of relation, until these connecting evidences were put in. Without them the respondents would have patent title, but it would not appear that that title was connected with the location notices."

It necessarily follows from this reasoning that it devolved upon the Last Chance to show the time when a valid location of the Last Chance was made, in order to connect its title by patent with the date when the location of its claim was made.

There is another class of cases, decided by the supreme court of the United States, which, by analogy, lead directly to the same conclusion. In Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, two parties had patents for the same mining ground,—one for a placer claim, the other for a lode claim. The question at issue was whether or not the fact that a patent had issued for the lode claim was not conclusive of the fact that the lode claim had been duly discovered, located, and recorded before the time of the application for a patent of the placer claim. The circuit court held that it was conclusive of the fact, and refused to allow any evidence tending to show a different state of facts. The supreme court reversed the case on account of this ruling, and, in so doing, declared that where two parties have patents for the same land, and the question is as to the superiority of title under the patents, and the decision depends upon extrinsic facts not shown by the patent, it is competent to establish it by proof of those facts. In Davis' Adm'r v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, the same general principle is announced with reference to controversies between parties who have obtained patents for mineral land, and other parties having patents for the same land known as town-site patents. The supreme court in both of these opinions clearly point out the distinction which exists between this class of cases and those of French v. Fyan, 93 U. S. 169, Refining Co. v. Kemp, 104 U. S. 636, and Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389, which are cited by counsel for the Last Chance as to the conclusiveness of patents, etc.

It may be conceded, as claimed by counsel, that the examination of witnesses covered a wider range than was necessary for the purpose of establishing the date when a valid location of the Last Chance claim was made; but the door to such an examination was opened by the Last Chance in its examination of witnesses, and the court thereafter allowed the Tyler in rebuttal to travel over the same ground covered by the Last Chance in its efforts to establish the date and the manner when and whereby it acquired title to the mining ground described in its patent. It is enough to say, upon this point, that the court frequently informed counsel and the jury that the testimony given by the witnesses in relation to this matter was only to be considered as admissible in so far as it tended to establish the date of the location of the Last Chance claim, and it repeated this admonition over and over again in its instructions to the jury. We are therefore of opinion that the jury were not,

and could not have been, misled by the latitude given by the court in the admission of testimony. It is argued that the weight of the evidence upon the question as to the priority of the respective locations is in favor of the Last Chance, and the remarks of the court in overruling a motion for a new trial are referred to as tending to sustain this argument. This question cannot be reviewed by this court. It is well settled that the overruling of a motion for a new trial is not a subject of exception under the practice established in the United States courts. We are, in our investigations, confined to the consideration of exceptions, taken at the trial, to the admission or rejection of evidence, and to the charge of the court and its refusal to charge. We have no concern with questions of fact, or of the weight to be given to the evidence which was properly admitted at the trial. Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 579, and authorities there cited.

The views we have expressed, taken in connection with the former opinion of this court, dispose of all the assignments of error properly presented by the record in this case. The judgment of the circuit court is affirmed, with costs.