TYLER MINING CO. v. SWEENEY et al.

(Circuit Court of Appeals, Ninth Circuit. January 16, 1893.)

No. 62.

1. JUDGMENT—RES JUDICATA—CONFLICTING MINING CLAIMS.
    The Tyler M. Co. applied for a patent to the Tyler mining claim. The Last Chance M. Co. protested against such application, and brought suit to determine the right of possession to so much of the surface ground as was included in the conflicting locations of the Tyler and Last Chance claims, as shown upon the diagram in the opinion of the court. The Tyler M. Co., after appearing and making a defense to said suit, withdrew its answer in open court, and judgment was entered for the Last Chance M. Co., reciting the priority of its claim. Subsequently the Tyler M. Co. left out from its original location a certain portion thereof, including the portion described in said judgment, and thereafter brought an ejectment suit against the Last Chance M. Co. for the ground not embraced in said judgment. *Held*, that the judgment in the prior suit was not res adjudicata as to the priority of the Last Chance location, and that it was conclusive only as to the right of possession to the triangular piece of ground involved in that suit.

2. SAME—PARALLELISM— RIGHT TO FOLLOW DIP — ABANDONMENT OF PART OF CLAIM.
    The fact that the Tyler withdrew its answer in the prior suit, and allowed the Last Chance to obtain judgment therein by default, did not have the effect of changing the Tyler location to a five-sided figure, so as to destroy the parallelism of the location, as required by section 2320, Rev. St.; or to prevent the Tyler company from thereafter claiming its end line to be at a point which left out the ground in dispute in the former suit; or to deprive it of the right to follow the dip of its lode beyond its side lines, as provided by section 2322, Rev. St. A locator of a mining claim may abandon a portion of his original location without forfeiting any rights he may have to the balance of the claim.

3. SAME—LODE CROSSING SIDE LINES.
    Under Rev. St. §§ 2320, 2322, the owner of a mining claim located approximately lengthwise of a lode, and having parallel end lines, may, if the apex passes out of the claim across a side line thereof, follow the dip beyond the side line, the same as if one original end line had been drawn at such crossing parallel to the other end line. King v. Mining Co., (Mont.) 24 Pac. Rep. 200, approved.

    SAME—LOCATION OF CLAIM ACROSS THE LODE.
    Where a mining claim is located so that the lode crosses the side lines nearly at right angles, the location is a valid one, but the side lines should be taken as end lines, and the owner has no right to follow the dip beyond them. Argentine Min. Co. v. Terrible Min. Co., 7 Sup. Ct. Rep. 1356, 122 U. S. 478, followed.

5. SAME—PRIORITY.
    When a claim is located along a lode, and its owner's right to follow the dip beyond the lateral lines conflicts with the right of an owner of a claim

located across the lode to the portion thereof actually within his lines, the claim having priority of location should prevail.

In Error to the Circuit Court of the United States for the District of Idaho. Reversed.

John R. McBride and Albert Allen, for plaintiff in error.
W. B. Heyburn, for defendants in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.    This is an action of ejectment to recover the possession of certain mining ground situated in Yreka mining district, Shoshone county, Idaho, and for damages. It was brought against several defendants, corporations and individuals. The writ of error to this court, however, only involves questions in dispute between the Tyler Mining Company, plaintiff in the court below, and plaintiff in error here, and the Last Chance Mining Company, defendant. There are 43 specific assignments of error, consisting of exceptions taken to the rulings of the court in admitting or rejecting testimony, and to the giving and refusing to give certain instructions. A proper determination of certain legal principles applicable to the questions presented will settle all the points in controversy. The following diagram will explain the location and situation of the respective mining claims:

From the record it appears that the Tyler location was made on the 20th day of September, 1885, in the form of a parallelogram, as required by the statute of the United States, claiming 1,500 feet in length and 600 feet in width of the Tyler lode; that on the 19th day of April, 1887, the Tyler Company made application for a patent to said ground; that the Last Chance Company protested against said application, and in due time brought suit in the territorial court to determine the right of possession to such portion of the surface ground as is designated within the lines of the triangle on the diagram in the southeast corner of the Tyler location, including about one acre of ground; that in that suit the Last Chance Company alleged, among other things, that the Last Chance claim was located prior to the Tyler claim; that after two trials of said case without any agreement being reached by the jury, the Tyler Company withdrew its answer in open court, and appeared no further in the case; that thereafter the Last Chance Company proved up its claim, and obtained judgment for the triangular piece of ground without costs, the judgment reciting the facts "that the Last Chance Mining Company * * * is the owner of, and by virtue of a valid location of a mining claim called the 'Last Chance,' made on the 17th day of September, A. D. 1885, * * * is entitled to the possession and right of possession of," the triangular piece of ground; that, after the Tyler Company withdrew its answer, it left out from its description of its mining location the 428 feet 6 inches at the eastern end of its location; and, there being no other contest to its application for a patent, it entered the remainder of its claim, and received from the receiver of the land office a duplicate receipt showing the entry.

The Tyler claim, as described in the complaint in this action, is for the ground thus entered, to wit, for 1,071 feet 6 inches in length and 600 feet in width, containing an area of 14.77 acres. The complaint alleges "that a large vein, lode, or ledge of quartz rock in place, bearing silver and lead, is found in said Tyler lode mining claim so owned by the plaintiff. That the same, in its longitudinal course or strike, passes into the said Tyler lode mining claim through the southeasterly end line thereof, and extends through the said mining claim in a northwesterly direction, and lengthwise of said claim, and passes out of said claim through the northwest end line thereof; and that the top or apex of said vein, lode, or ledge lies throughout the entire length of said claim, inside of the surface lines thereof, as aforesaid, extended downward vertically. That said vein, lode, or ledge in its downward course departs from a perpendicular at an angle of about forty degrees from the horizontal * * * in a southerly direction, and that the general strike or course of said lode is nearly or quite coincident with the surface lines of said claim; and that by reason of the foregoing the plaintiff is now, and at all times hereafter mentioned has been, the owner of and entitled to the exclusive possession of said vein, and so much of said vein, lode, or ledge as the top or apex whereof lies inside of said surface boundaries as aforesaid, throughout its entire depth;" and that defendants have unlawfully taken possession of said vein, lode, or ledge in its downward course, and have been unlawfully extracting and removing the ores

therefrom, etc.   The defendants claim that the lode upon which they are working is theirs; that the apex thereof is within their location, and that they have lawfully followed it on its dip into the earth.

1. Was the judgment in the territorial court conclusive between the parties as to the date of the location of the Last Chance claim? This question is presented in various forms.   The court admitted the judgment in evidence against the objection of plaintiff.   The plaintiff thereafter in the course of the trial, offered to prove (1) that at the time said judgment was rendered it was agreed between the respective parties thereto that the Tyler Company should withdraw its answer in open court; that the judgment was to be simply in favor of the Last Chance Company for the triangular piece of ground, and that the Tyler Company would abandon all right to it; (2) that the notice of the Last Chance claim was not posted upon the ground until the 22d day of September, 1885, two days after the location of the Tyler claim;   (3) that there was no discovery of any kind of rock in place bearing any precious metals, upon the Last Chance claim, or within its boundaries, until long after the location of the Tyler claim; (4) that the boundary stakes of the Last Chance claim, instead of being as marked out on the map, stood some 1,380 feet further to the east, and that there never was any amended location of that claim, or change made in its boundaries until the survey of the Tyler claim in 1889.   These offers, with others of similar import, were refused by the court, and plaintiff duly excepted to each ruling.   The court, of its own motion, upon this point instructed the jury as follows:

"Plaintiff shows by evidence undisputed that its Tyler claim was located on the 20th day of September, 1885, and the defendant Last Chance Company shows by the evidence of a judgment, which cannot be disputed in this action, that its Last Chance claim was located on the 17th day of September, 1885, from which it follows that the Last Chance claim is the older.   Now, upon that point I repeat to you that, so far as this trial is concerned, and so far as you have any consideration of the matter, the dates of those two claims are fixed by evidence you cannot consider further."

Were these rulings of the court erroneous?   The general principle that a judgment of a court of competent jurisdiction between the same parties, and upon the same issues, is, as a plea, a bar, or, as evidence, conclusive, is well settled.   Whenever a cause has been once fairly tried and finally determined, the same questions, as between the same parties, certainly ought not to be tried again. In a proper case this rule should be strictly adhered to.   McLeod v. Lee, 17 Nev. 112.[1]   But when the second suit is upon a different cause of action, and there is a dispute as to what was involved in the first suit, inquiry should always be made as to the real question actually litigated and determined in the first suit, and it is only upon that question that the judgment can be held conclusive in the second suit.   It must appear either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit.   Cromwell v. County of Sac, 94 U. S. 353; Russell v. Place, Id. 608; Riverside

[1] 28 Pac. Rep. 124.

Co. v. Townshend, 120 Ill. 18, 9 N. E. Rep. 65; City of Chicago v. Cameron, 120 Ill. 459, 11 N. E. Rep. 899; Hymes v. Estey, 116 N. Y. 509, 22 N. E. Rep. 1087; Legrand v. Rixey's Adm'r, 83 Va. 862, 3 S. E. Rep. 864; Foye v. Patch, 132 Mass. 110; Solly v. Clayton, 12 Colo. 30, 20 Pac. Rep. 351; Hickerson v. City of Mexico, 58 Mo. 62; Campbell v. Rankin, 99 U. S. 261.

The prior suit necessarily involved the question 'as to which company had the better right to the triangular piece of ground. No part of that ground is involved in the present suit. If the prior suit had been contested, it might or might not have involved the issue as to the dates of the respective locations; but, the judgment having been entered after the issues raised by the answer of the Tyler Company were withdrawn, the question as to the dates of the respective locations cannot be said to have been necessarily, or at all, adjudicated. Finnegan v. Campbell, 74 Iowa, 158, 37 N. W. Rep. 127. As between the Tyler and the Last Chance Company there was no longer any issue as to their respective rights to the triangular piece of ground; but the Last Chance was required to prove its right of possession to that ground in order to establish its rights thereto as against the United States, and in doing this it was necessary for it to show that it had a valid mining location. The date when such location was made was immaterial. All that was necessary to prove was that it was made at any time prior to the commencement of that action. It is true that the judgment recites the fact that the Last Chance location was prior to the Tyler, but the judgment is conclusive only in respect to the facts necessary to uphold it, and, if the fact of priority was immaterial to the issues upon which the case was tried, and the controversy did not turn upon it, the judgment will not conclude the parties in reference to such fact. People v. Johnson, 38 N. Y. 63. In Hughes v. U. S., the court said:

"In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties, or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit * * * was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." 4 Wall. 237.

When the Tyler Company withdrew its answer, it thereby abandoned its right to the ground in dispute, and thereafter the question as to when the Last Chance was located became wholly immaterial to any further issue in the case as between the Tyler and the Last Chance. The right of the Tyler to abandon this portion of its original location cannot be questioned. A person locating a quartz mining lode or claim under the laws of the United States is entitled to locate 1,500 feet in length upon the lode, if the apex of the same is within the surface boundaries marked out by him. He cannot claim any more; but, if any controversies arise as to any portion of the ground, he may abandon his rights to such portion of the claim as may be in dispute without forfeiting any rights he may have to the balance of his claim. Litigation is expensive. Compromises are favored. Agreements to withdraw from litigation to save expense should be sanctioned and encouraged. A litigant

has the right to "buy his peace." In Cromwell v. County of Sac, supra, the court said:

"Various considerations other than the actual merits may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand; such as the smallness of the amount, or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. A judgment by default only admits, for the purpose of the action, the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim."

The Tyler Company had the undoubted right to sell the eastern 417 feet of the Tyler location to the Last Chance for any nominal sum it pleased, to avoid the litigation as to the triangular piece of ground, without endangering its title to the other portion of its claim. What difference does it make whether it sold the ground or abandoned it? None whatever, so far as the principle that is involved in this branch of the case is concerned. In either event the Tyler Company would have the right to show that at the time the judgment was rendered it had withdrawn its answer, and had no right, title, or interest in or to the particular piece of ground involved in that controversy. The judgment was conclusive only as to the right of possession to the triangular piece of ground involved in that suit, no portion of which is in controversy in this suit. The rulings of the court at variance with the views we have expressed were erroneous, and are of such a character as entitles the plaintiff to a new trial.

2. The questions presented upon the other branch of the assignment of errors relate to the rights of a locator under the mining laws of the United States to follow his lode in its depth beyond the side lines of his location. Defendant contends that the claim of the Tyler Company is a five-sided figure, and that it has no parallel end lines, and hence has no extra lateral rights to follow its lode or vein on its dip outside of its surface lines; that the Tyler Company must follow the lines of the original location, leaving out the triangular piece of ground; that the parallel end line drawn on the diagram at the point where the lode leaves the southerly side line of the Tyler cannot be considered as the easterly end line of the Tyler claim; and that, under the principles announced in Iron Silver Min. Co. v. Elgin Min. & Smelting Co., 118 U. S. 196, 6 Sup. Ct. Rep. 1177; Argentine Min. Co. v. Terrible Min. Co., 122 U. S. 478, 7 Sup. Ct. Rep. 1356; and Montana Co. v. Clark, 42 Fed. Rep. 626,—the Tyler Company is not entitled to follow the lode in its downward course beyond the side lines of its location. The plaintiff, on the other hand, among other things, contends·that, as the Tyler Company covered the apex of its vein by a proper location along the general course of the lode, it could not be deprived of the benefit of its right to pursue its vein on its dip beyond the surface side lines "because a prior locator has taken possession of an adjoining section of the vein, and has covered the portion of

which the apex is in the former's location by his surface lines." This contention is perhaps made clearer by a further quotation from plaintiff's brief:

"Assuming that the Last Chance is the older location, its discovery is on the cropping of the vein adjoining our own, instead of locating along the vein, as our claim is located, it located across the lode, and seeks to cut us out of the vein that we may have located properly according to law, by extending its side lines over ground which is underneath the apex in ours."

These contentions of the respective counsel, as above stated, are at variance with the instructions given by the court of its own motion. We are therefore called upon to determine what construction should be given to the statutes of the United States upon these questions. This demands, at our hand, a careful consideration, not only of the express provisions of the statutes in question, but also of the various decisions bearing more or less upon the points at issue in this case.

The mining laws of the United States were passed upon the theory that the lodes and veins of mineral-bearing rock in their general course could be readily ascertained by the locators, and that, by locating a claim in the form of a parallelogram 1,500 feet in length and 600 feet in width, there would be no difficulty of including the lode within the surface ground so located. But the facts are that the lodes or veins in the mineral regions do not always crop out upon the surface of the ground, and it frequently happens that when the apex of the lodes does appear upon the surface that it is only for a short distance, and in such cases it is often impossible to determine the general course of the lode for months, and sometimes years, after the location is made. When the course of the lode is ascertained at the point of discovery, it is by no means certain that the same course will be maintained for the distance of 1,500 feet. It is liable to so deviate in its course as to pass through the side lines of the location before reaching either of the end lines, if the point of discovery was near the center of the location; and where the course of the lode is not easily ascertained the location is liable to be made in the wrong direction, and future developments prove that the lode in its course passes through the side lines at almost right angles with the side lines. It will thus be seen that great difficulty may often arise in making locations under the law so as to secure the lode for 1,500 feet in length, within a surface width of 600 feet, which is in all cases the principal object sought to be accomplished by the locator. Hence it follows in some instances that the locator makes his location where the lode crops out upon the surface in various shapes and forms, varying from a plain parallelogram, which is required by law, to an isosceles triangle, as in Montana Co. v. Clark, 42 Fed. Rep. 626, or a curve, in the shape of a horseshoe, as in Iron Silver Min. Co. v. Elgin Min. & Smelting Co., 118 U. S. 196, 6 Sup. Ct. Rep. 1177. Where the location is properly made along the course of the lode in the form of a parallelogram, and the lode extends within the side lines from one end line to the other, the law declares in plain terms what the rights of the locator are, and there is nothing left for the courts to construe.

After making the location and marking the lines, as required by the statute of the United States, the locator's rights are to be determined by the lines of his surface location, and these lines cannot be changed so as to interfere with the rights of other persons. The locators have "the exclusive right of possession and enjoyment of all the surface included within the lines of their location, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges. may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges." Rev. St. U. S. § 2322. Where the location is made in the form of an octagon, or a curved figure in the shape of a horseshoe, it will readily be seen that the rights of the locators are different. The same principles of the law, and the construction of the statutes of the United States as applied to locations made in the form of a parallelogram, cannot be extended to such irregular and peculiarly shaped locations. No general rule can be stated that will be directly applicable to every imaginable form of location that may be made. In Iron Silver Min. Co. v. Elgin Min. & Smelting Co., 118 U. S. 208, 6 Sup. Ct. Rep. 1177, the court said:

"Under the act of 1866, (14 St. p. 251,) parallelism in the end lines of a surface location was not required, but where a location has been made since the act of 1872, such parallelism is essential to the existence of any right in the locator or patentee to follow his vein outside of the vertical planes drawn through the side lines. His lateral right, by the statute, is confined to such portion of the vein as lies between such planes drawn through the end lines, and extended in their own direction; that is, between parallel vertical planes. It can embrace no other portion."

It is upon this general language that defendant relies in support of his contention. The language of the opinion of the court in that case must be considered with reference to the particular facts of the case and to the questions presented to the court for its decision. The exterior lines of the Stone claim formed a figure resembling a horseshoe. As a matter of fact the owners claimed that the location had end lines, and an examination of the diagram on page 203, 118 U. S., and page 1181, 6 Sup. Ct. Rep., shows lines that are parallel in their general direction; but the court said that the end lines "marked on the plat as end lines are not such," and, by reason of the peculiar surface of the Stone claim, held that the defendant in that case could not follow the lode existing therein in its downward course beyond the surface lines of the claim. The facts of that case were entirely dissimilar from the case at bar. Here the location of the Tyler was properly made in the form of a parallelogram along the course of the lode or vein. The lode extends from the northwesterly end line for a distance of nearly 1,100 feet within the side lines of the surface location, and then so

changes its course as to cross the southerly side line into the Last Chance location. The learned justice who wrote the opinion in the horseshoe case, when he said that the parallelism of the end lines "is essential to the existence of any right in the locator or patentee to follow his vein outside of the vertical planes drawn through the side lines," did not mean that it was essential to such right that the lode should extend in its length from one end line to the other of the location. If the lode in question, instead of extending into the Last Chance location, had abruptly broken off within the surface lines of the Tyler near the point where in fact it crossed the line, there could certainly be no question as to the right of the Tyler to follow the lode or vein in its downward course for its entire depth outside of the vertical planes drawn through the side lines. The fact that it continued its course and crossed the side line does not in any manner change this principle. In either case the locator is entitled to the same rights. In such cases the end lines are not necessarily those which are marked on the ground as such. An end line may be drawn at the point where the lode abruptly terminates within the surface lines, or at the point where the apex of the lode crosses the side line of the surface location. This, upon principle, justice, and authority, it seems to us, is the only reasonable construction that can be given to the statute. Whenever, and in whatever manner, this point has been presented by any similar facts, the rulings of the courts have been substantially in acordance with the views we have expressed. Golden Fleece G. & S. M. Co. v. Cable Con. G. & S. M. Co., 12 Nev. 313; Doe v. Sanger, 83 Cal. 203, 23 Pac. Rep. 365; Kahn v. Telegraph M. Co., 2 Utah, 174; King v. Amy, etc., Min. Co., 9 Mont. 543, 24 Pac. Rep. 200. In the case last cited the lode crossed the surface lines without reaching either end line as marked on the surface, and the court held that, where a lode or vein crosses the side line of a location, the strike is terminated by the plane of such side line, and the right to follow the vein on its dip is determined by a vertical plane, parallel to the end lines, drawn downward, and which takes effect at the point where the apex intersects the side line. The court, in its opinion, after reviewing the Flagstaff Case, 98 U. S. 463, the Argentine Case, 122 U. S. 478, 7 Sup. Ct. Rep. 1356, and the Horseshoe Case, 118 U. S. 208, 6 Sup. Ct. Rep. 1177, and pointing out the differences existing between them and the Amy Case, and stating the various contentions of counsel, said:

"The law intends that the plane of the end line shall operate as a boundary to the dip, and so operate at the point where the strike is ended. If the strike reached the original end line as in a regular location, the bounding plane would there operate upon the dip. If the strike, by reason of its going out of a side line, falls short of reaching the original end-line plane, that plane must take effect where the strike in fact ends,—that is, at a point on the side line; * * * and, if it takes effect there, its parallelism must not be destroyed. We therefore have the bounding plane operating at the point where the apex leaves the north side line, and operating parallel to the east end line, and retaining its parallelism as originally marked on the ground. It is not a new line or plane, or one judicially constructed. It is determined by the location lines on the surface. There is never any readjustment according to subsequent developments. The parallelism of the end-line planes is fixed by location, and never varies. The point of departure of the strike from the

surface lines fixes the point where the end-line plane is to perform its functions, whether that departure be at an end line, as contemplated by the statute, or whether accident has fixed it at a point on a side line." King v. Mining Co., 9 Mont. 575, 24 Pac. Rep. 200.

In Doe v. Sanger, supra, the location was not of exact width, and the end lines, as originally marked on the surface, were not precisely parallel with each other. The court, after reviewing the case of Iron Silver Min. Co. v. Elgin Min. & Smelting Co., held that a substantial compliance with section 2320 of the Revised Statutes of the United States, requiring the end lines of each claim located upon a vein or lode to be parallel, is all that is required; that the object of the statute is sufficiently met to sustain that right if the location is made lengthwise of the lode or vein in a quadrangular shape, notwithstanding the fact that the end lines are not exactly parallel, and that the locator has the right to make the end lines parallel, where such change does not interfere with the rights of other persons; and in the course of the opinion it is said that "any different rule would be a disgrace to justice, and an impeachment of the common sense of lawmakers." The fact that the Tyler Company did not contest its rights to the triangular piece of ground mentioned in the first branch of this case, and thereby allowed the Last Chance to take that portion of its original location, did not have the effect of depriving the Tyler Company of its right to draw its end line so as to leave out the triangular piece of ground at or near the point where the lode actually crosses its southerly side line, as shown in the diagram. This would be its right independent of the former controversy, and having, to all intents and purposes, abandoned the eastern or southeastern portion of its original surface location, as hereinbefore stated, it lost no rights to the other portion of its ground, including the course of the lode within its surface boundaries. This change did not in any manner interfere with the property rights of the owners of the Last Chance claim, or of any other of the locations involved in this suit.

From the views we have expressed and the conclusions we have reached it follows that the contention of the defendants' counsel cannot be sustained. The contention of plaintiff's counsel is equally untenable. In the Flagstaff Case the court, after referring to the statutes of 1866 (14 U. S. St. p. 251) and of 1872, (17 U. S. St. p. 91,) said:

"We think that the intent of both statutes is that mining locations on lodes or veins shall be made thereon lengthwise, in the general direction of such veins or lodes on the surface of the earth where they are discoverable; and that the end lines are to cross the lode, and extend perpendicularly downwards, and to be continued in their own direction, either way, horizontally; and that the right to follow the dip outside of the side lines is based on the hypothesis that the direction of these lines corresponds substantially with the course of the lode or vein at its apex on or near the surface. It was not the intent of the law to allow a person to make his location crosswise of a vein, so that the side lines shall cross it, and thereby give him the right to follow the strike of the vein outside of his side lines. That would subvert the whole system sought to be established by the law. If he does locate his claim in that way, his rights must be subordinated to the rights of those who have properly

located on the lode. Their right to follow the dip outside of their side lines cannot be interfered with by him. His right to the lode only extends to so much of the lode as his claim covers. If he has located crosswise of the lode, and his claim is only one hundred feet wide, that one hundred feet is all he has a right to,"

In such cases "the side lines of the location are really the end lines of the claim, considering the direction or course of the lode at the surface." Mining Co. v. Tarbet, 98 U. S. 467. This decision is quoted with approval and followed in Argentine Min. Co. v. Terrible Min. Co., 122 U. S. 478, 7 Sup. Ct. Rep. 1356.

From the diagram in this case it appears that the lode in its course lengthwise crosses the side lines of the Last Chance location at nearly right angles, and, under the rules laid down in the decisions of the supreme court of the United States, the side lines of the location of the Last Chance as marked on the surface of the ground are to be treated as its end lines, and the owners thereof would have the exclusive right of possession and enjoyment of such portion of the lode throughout its entire depth, the top or apex of which is inside of the surface lines of the location, as lies between vertical planes drawn downward through such end lines. It therefore appears that both locations were made in such form and shape as has been recognized by the adjudicated cases upon these questions to entitle them to certain fixed and definite rights to follow the lode in its downward course, and the rights of the Tyler Company and of the Last Chance Company in this respect depend upon the question of their priority. The court below, in its fourth instruction given to the jury of its own motion, after clearly stating the manner in which locations should be made under the law to entitle the owners to follow the lode in its downward course beyond the side lines of the surface location, said:

"The plaintiff claims that its Tyler location is located substantially according to such provisions and contemplation of the law, and it results that it may thus follow its ledge downward. The burden rests upon plaintiff to show such facts, and, when shown, it would follow that the plaintiff would be entitled to so pursue its ledge, unless it comes in conflict with some prior locator who had also located a claim in such manner as the law will justify."

The entire instruction was correct, and the instructions requested by plaintiff in opposition to the last clause of the instruction above quoted were properly refused. The sixth instruction given by the court, defining the rights of a location made where the lode runs at right angles across the location, instead of along it, as in the case of the Last Chance, is directly in accordance with the views we have expressed; and it follows, therefore, that the instructions asked by plaintiff in opposition thereto were properly refused. Each company must, of course, prove that its location is a valid one, and that it was made in substantial compliance with all the essential provisions of the law, in order to entitle it to the rights given by the law; and, among other things applicable to the controversy between the parties, it must be shown either that the apex of the lode is found within the surface boundaries of the respective locations, or that the lode was discovered therein prior to the rights acquired by the other party. The statute expressly

provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." Rev. St. U. S. § 2320.

In cases of controversy where the right exists under each valid location to follow the lode in its downward course it necessarily follows that both locations cannot rightfully occupy the same space of ground, and in all cases where a controversy of this kind arises the prior locator must prevail, precisely as in cases of like controversy between locations overlapping each other lengthwise on the course of the lode. This is the rule as announced by the court below upon this branch of the case, and it is, in our opinion, sound, logical, and just, and is sustained by authority. Mr. Justice Field, in Argentine Min. Co. v. Terrible Min. Co., supra, in reviewing an instruction given by the circuit court, said:

"If there was an apex or outcropping of the same vein within the surface of the boundaries of the claims of the defendant, that company could not extend its workings under the Adelaide location; that being of earlier date. Assuming that on the same vein there were surface outcroppings within the boundaries of both claims, the one first located necessarily carried the right to work the vein."

For the errors in the rulings of the court with reference to the conclusiveness of the judgment in the territorial court as to the priority of the Last Chance location the judgment of the circuit court is reversed, and the cause remanded for a new trial.