TYLER MIN. CO. v. LAST CHANCE MIN. CO. et al.

(Circuit Court, D. Idaho, N. D.   December 14, 1895.)

No. 21.

1. MINES AND MINING—RIGHT TO FOLLOW DIP—MAKING NEW END LINES.
   When the outcrop of a vein passes through one end line and one side line of a location, the locator may draw in the other end line to the point of intersection of the vein with the side line, and abandon what lies beyond; and he will then have the same extralateral rights as if the claim had been so located in the first instance.   4 C. C. A. 329, 54 Fed. 284 and 9 C. C. A. 613, 61 Fed. 557, followed.

2. SAME.
   Even if the locator does not actually so draw in his end line, and abandon what lies beyond, a new end line will be considered as drawn at that point, and will have the same extralateral rights as if the claim had been so located in the first instance.   4 C. C. A. 329, 54 Fed. 284, and 9 C. C. A. 613, 61 Fed. 557, followed.

3. SAME—FOLLOWING DIP—PRIOR LOCATION.
   The owner of a location having extralateral rights cannot follow the dip within the side lines of a prior location, which has the vein passing through both of its side lines, so that they are to be considered as end lines.

This was an action by the Tyler Mining Company against the Last Chance Mining Company, the Idaho Mining Company, and the Republican Mining Company.

John R. McBride, for plaintiff.
W. B. Heyburn, for defendants.

BEATTY, District Judge.   The first trial of this cause in this court resulted in a judgment on April 11, 1892, in favor of defendant the Last Chance Company, which, on error to the circuit court of appeals, was reversed because of the admission in evidence of a prior judgment.   4 C. C. A. 329, 54 Fed. 284.   Upon a new trial had in pursuance of the judgment of the appellate court, the plaintiff, on March 6, 1893, recovered judgment against all the defendant companies, which, on error to the circuit court of appeals, was affirmed (9 C. C. A. 613, 61 Fed. 557), whereupon the cause was taken to the supreme court by certiorari, where the action of the lower courts in excluding as evidence the judgment above referred to was held error, and the cause was remanded for a new trial (157 U. S. 683, 15 Sup. Ct. 733); and it is now, at the October term, 1895, again submitted to this court, upon an agreed statement of facts. By such statement it is provided that the diagram of the premises found on page 331, 4 C. C. A., and page 285, 54 Fed., may be treated as a part of the statement, a substantial copy of which is as follows:

'Among the facts stipulated by the parties are that the plaintiff owns the Tyler mining claim, as described in its complaint, being the tract within the Tyler boundaries, 1, 2, 3, 4, in the diagram; that the defendant Last Chance Company owns the Last Chance claim, as described in the pleadings; that the vein found in the Tyler and Last Chance claims dips "southwesterly at an angle of about 45° from the horizontal"; that the line of the vein, as indicated on the diagram, is approximately the line of the footwall; "that the said vein passes through the southerly side line of the Tyler claim, as originally located, and crosses the northwesterly end line thereof," and, "after crossing the said southerly side line of the Tyler claim, passes through, and outcrops upon, the Last Chance claim, as shown upon the diagram"; that the Republican fraction mining claim was duly located on the 1st of November, 1885, and that the vein discovered therein "is the same vein which passes out through the southerly side line of the Tyler claim"; and that this vein, on its dip, passes under the Last Chance fraction and Skookum claims. By these conceded facts, and the adjudications of the courts, I must be guided, even to the abandonment of a view as to underground rights which I had hoped might prevail.

1. The chief issue is between the plaintiff and the Last Chance Company. To that between the plaintiff and the other defendants, very little attention has at any time been given by the counsel, and I think it has never been referred to by the appellate courts. The plaintiff's Tyler claim, as originally located, on September 20, 1885, and for which application for patent as first made, was, as represented in the diagram, within the boundaries 1, 2, 5, and 6;

but the application was amended and patent received for the ground as now claimed, and included within the lines 1, 2, 3, and 4. It will be observed that the vein passes through the two end lines of the claim as now owned by plaintiff. Plaintiff, so holding its claim, contends that it is entitled to follow the vein on the dip between the prolonged parallel planes of the end lines under all the claims of the defendants. The original application for patent to the Tyler claim was adversed by the Last Chance, which resulted in the triangular piece in conflict with the Last Chance being held as a part of the latter, thus leaving the Tyler claim of irregular shape, with five boundary lines; and the defendants claim that this irregularity, and the further fact that the Tyler vein passes out of the claim through one of its side lines, as originally located, operate to debar the plaintiff from following the ledge on its dip beyond a perpendicular plane passed through the southerly side line of its claim. If, in this hearing, we are to consider the Tyler claim as it is stipulated the plaintiff now owns it, the suggested irregularities are eliminated, and we have a claim regular in form, with its vein passing through the two end lines. Moreover, the court of appeals, in 4 C. C. A., and 54 Fed., supra, distinctly held that the plaintiff could abandon a part of its claim and draw in the end line, as it did; and, in effect, the court held that under those circumstances the plaintiff had all the extralateral rights it would have had, had the Tyler claim been originally located as now claimed and held. That view of the court of appeals has not been criticised by the supreme court.

2. If, however, the agreed statement, "that the said vein passes through the southerly side line of the Tyler claim as originally located," so operates that this case must be considered as it would be, had the plaintiff never drawn in its end line, then, by the weight of authority, the result would not be different. In the case last cited, on page 338, 4 C. C. A., and page 292, 54 Fed., the court held "that an end line may be drawn * * * at the point where the apex of the lode crosses the side line of the surface location." Also, it has been held in a number of recent cases that, when a ledge passes through an end and a side line of a location, a new end line will be drawn where the ledge crosses the side line, and, between the prolonged planes of the located and constructed end lines, the locator may follow his ledge on its dip beyond his side line. This case, 9 C. C. A. 613, 61 Fed. 560, 564; Consolidated Wyoming Gold Min. Co. v. Champion Min. Co., 63 Fed. 541, 546; Del Monte Mining & Milling Co. v. New York & L. C. Min. Co., 66 Fed. 212; and the recent case of Fitzgerald v. Clark (Mont.) 42 Pac. 273; and the supreme court, in 157 U. S. 696, 15 Sup. Ct. 733, says, "there has been no decision [by that court] as to what extraterritorial rights exist if a vein enters at an end and passes out at a side line," which the court suggests is a very interesting and somewhat difficult question. The court does not answer it, but suggests the queries:

"Is that a case for which no provision has been made by statute? Are the parties left to the old rule of the common law, that the owner of real estate

owns all above and below the surface, and no more?   Or may the court rely upon some equitable doctrine, and give to the owner of the vein the right to pursue it on its dip, in whatever direction that may go, within the limits of some equitably created end lines?"

3. What the defendants now ask is, in effect, the application of the common-law rule.   To do this, we must find some warrant for it in the statute, or at least nothing against it.   If there is any right emphatically granted by the mining laws, it is one in direct contravention of the common law.   Section 2322, Rev. St., grants to the locator of a ledge (1) the right to follow it throughout its entire depth; (2) contrary to the common-law rule, to so follow it "outside the vertical side lines of the surface location"; and (3) when he so locates his claim that his ledge passes through his two end lines, there is no doubt that he can follow it on its dip indefinitely, and along its course for a distance equal to that between the two end lines.   In other words, the right granted is to follow it downward wherever it may go, regardless of the vertical planes of his side lines, and for a length along its course equal to the length of apex within his surface limits restricted only by the vertical, extended planes of his end lines.   What reason, under the law, can be assigned why these rights shall not apply when his location is such that his ledge passes through it in some other way than from end to end?   The law does not say that his ledge must run from end to end, but he is granted this right of following "all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of his surface lines."   Upon the fact that an apex is within his surface lines, all his underground rights are based.   When, then, he owns an apex, whether it extends through the entire or through but a part of his location, it should follow that he owns an equal length of the ledge to its utmost depth.   These are the important rights granted by the law.   Take them away, and we take all from the law that is of value to the miner.   Courts will not fritter them away by ingrafting into the law antagonistic common-law principles, or other judicial legislation.   Is there any difficulty in applying these rights to a location wherein the ledge passes through an end and a side line?   What are the planes that must then bound the underground rights?   It will be conceded that the plane of the end line through which the ledge passes shall be one.   The statute says the right to follow the ledge along its course underground shall be limited by the planes passed through the two end lines, but it is manifest that this rule cannot be followed when the apex of the ledge, before reaching the other end line, passes out of a side line, for it would give the locator more of the ledge underground than he has of apex.   It would give him a portion of the ledge of which he does not hold the apex, and to hold that his ledge shall be cut off by the vertical plane of his side line is cutting off the right to follow it down which the law has given him.   Instead thereof, to establish at the point where the apex crosses the side line a vertical plane parallel to the plane of the end line cut by the apex, and allow him to follow the ledge

on its dip between these two planes, is not in violation of any provision of the statute, and gives the miner no greater rights than the statute intends he should have. The courts, by the cases above cited, have so held, and it is now held that the plaintiff can so follow its ledge as far as not in conflict with some prior right.

4. At the first trial of this cause the jury was instructed that the plaintiff could so follow its ledge, "unless it comes in conflict with some prior locator who had also located a claim in such manner as the law will justify," which was affirmed by the court of appeals. 4 C. C. A. 329, 54 Fed. 294. So it is now held. But the Last Chance claim is prior in location to the Tyler, and it is located in such manner as the courts hold the law justifies. The court of appeals, on the page last above noted, says of the two claims:

"It therefore appears that both locations were made in such form and shape as has been recognized by the adjudicated cases upon these questions to entitle them to certain fixed and definite rights, to follow the ledge in its downward course; and the rights of the Tyler Company and of the Last Chance Company, in this respect, depend upon the question of their priority."

The supreme court, when considering this case (157 U. S., and 15 Sup. Ct., supra), after deciding only that issue which fixed the priority of location in the Last Chance, reversed and remanded it to this court for new trial. Opposing counsel differed as to whether the decision was a final one in favor of the Last Chance Company, or only determined the question of priority and left all other issues for trial. It is deemed unnecessary to review this question, for in either event, with the agreed facts in this case, the result must be the same. The Last Chance claim is prior. It is so located that courts generally say its owner is entitled to follow the ledge on its downward course between the vertical planes of what were located as its side lines. It must result that, as to the Last Chance location, the Tyler ledge cannot be followed downward further than to the vertical plane through the located north side line of the Last Chance. The defendant Last Chance Company is therefore entitled to judgment against the plaintiff for the possession of all the premises in dispute which lie between those planes which descend vertically from those two lines of the Last Chance which were located as its side lines, and it is ordered accordingly. That the issues between plaintiff and the defendants the Republican and Idaho companies are, through prior proceedings in this cause, res adjudicata, counsel have not agreed, but I am of the opinion that they are unsettled. The Republican fraction claim being owned by the defendant the Republican Mining Company, and being subsequent in date of location to the Tyler claim, it must follow from the conclusion above reached that the plaintiff can follow its ledge under the Republican fraction claim, and it is allowed judgment accordingly. Doubting that the facts relative to the issue between the plaintiff and the Idaho Company are presented in this record, no determination of such issue is now made.