TYLER MIN. CO. et al. v. LAST CHANCE MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1898.)

No. 429.

1. INJUNCTION BOND—POWER OF COURT ON DISSOLUTION—JUDGMENT AGAINST SURETIES.

A court of equity, on the dissolution of an injunction, may under its general powers, and in the absence of statutory provisions, have the damages occasioned by its issuance assessed under its own direction, and may render judgment therefor against the sureties as an incident to the principal suit.

2. SAME—RELEASE OF SURETIES—MODIFICATION OF INJUNCTION.

Under the rule that the liability of a surety cannot be extended by implication beyond the express terms of his contract, sureties on a bond given to procure a restraining order, which order required the defendants to cease working a certain portion of a mine, and to refrain from removing or appropriating ore previously taken therefrom, cannot be held liable for damages accruing to defendants after a subsequent order, which continued such restraining order in force, but modified and changed it by permitting the working of the mine, and the disposition of the ore taken therefrom, under regulations prescribed by the court.

**3. SAME—DAMAGES RECOVERABLE.**
In a suit to enjoin defendant from the further working of a mine beyond the alleged limits of its claim, in which a temporary injunction was allowed, and by a subsequent order the court required the defendant to pump the water from its workings to permit an inspection by complainant's engineers, the complainant is liable on its bond, on a final determination of the suit in favor of defendant, for the cost of such pumping, though continued much longer than was necessary for the making of the inspection, where such continuance was solely by reason of the order, and the complainant itself delayed its examination, and took no steps to have the work stopped.

Appeal from the Circuit Court of the United States for the District of Idaho.

This was a suit in equity to restrain the defendants from working certain mines within the alleged boundary of complainant's claim, and for an accounting for the ore taken therefrom. There was a decree for defendants, and a judgment for damages against complainant and the sureties on its injunction bond, from which they appeal.

John R. McBride, for appellants.

W. B. Heyburn, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The Last Chance Mining Company, having discovered a vein of mineral bearing rock in place in the Shoshone mining district of the state of Idaho, for the purpose of acquiring it, located, under the laws of the United States, a claim thereon, in the form of a parallelogram, 1,500 feet in length and 600 feet in width. Shortly thereafter the Tyler Mining Company, finding a vein of mineral bearing rock in place in a northwesterly direction from the Last Chance location, made a location thereon, in the form of a parallelogram, 1,500 feet in length and 600 feet in width, the southeasterly corner of which overlapped the Last Chance location. Thereafter a piece of mining ground adjoining the Tyler on the southwest, and lying between it and the Last Chance, was located as the Republican Fraction; and adjoining that, and in part overlapping it, were located the Last Chance Fraction and Skookum Fraction claims. The Tyler Company having applied for a patent for its claim, a contest was initiated by the Last Chance Company in the United States land office, resulting in a suit in one of the courts of the state in which the claims are situated, and which culminated in a judgment establishing the right of the Last Chance Company to that part of the Tyler location that overlapped the prior location of the Last Chance Company. Thereupon the Tyler drew in its southeasterly end line so as to avoid the conflict, and its claim as so changed was subsequently patented by the government. Both the Tyler and Last Chance claims were extensively mined. The Tyler Company, claiming that its right in and to the vein having its apex within its surface lines, in its dip southerly beyond its side line, was being impinged upon by the underground working and mining thereof by the Last

Chance Company, and by the owners of the Republican, Skookum, and Last Chance Fraction claims, commenced an action of ejectment in the court below against the Last Chance Company, the Idaho Mining Company (owner of the Skookum and Last Chance Fraction claims), the Republican Mining Company (owner of the Republican Fraction claim), and several individual defendants, to recover the possession of the vein so claimed by it, together with damages in the sum of $200,000, the alleged value of the ore therefrom averred to have been unlawfully extracted and appropriated by the defendants to the action. The action was subsequently dismissed as to the individual defendants. In aid of that action at law, the Tyler Company at the same time, or immediately thereafter, filed in the same court the present bill in equity against the same defendants, alleging the same rights on its part, and similar unlawful acts on the part of the defendants to the bill, and, alleging the threats of the defendants to continue the mining and appropriation of the ore from the vein to which the complainant alleged title, prayed, among other things, the equitable interposition of the court restraining the defendants from mining and appropriating that ore, and a decree establishing the alleged rights of the complainant against the defendants.

The action at law was tried several times. At the first trial, in the circuit court, judgment was rendered in favor of the Last Chance Company, and against the Republican and Idaho Mining Companies, neither of which sued out a writ of error therefrom. The Tyler Company sued out a writ of error to this court, and the judgment in favor of the Last Chance Company was reversed. Tyler Min. Co. v. Last Chance Min. Co., 4 C. C. A. 329, 54 Fed. 284, and 7 U. S. App. 463. Upon the second trial in the court below, judgment was rendered in favor of the Tyler Company against all of the defendants to the action. The Last Chance Company then sued out a writ of error to this court, and the judgment of the circuit court was affirmed. Last Chance Min. Co. v. Tyler Min. Co., 9 C. C. A. 613, 61 Fed. 557. The case was then taken, on the application of the Last Chance Company, upon writ of certiorari, to the supreme court, where the judgments of this court and of the circuit court were reversed, and the cause remanded to the latter court, with instructions to grant a new trial. 157 U. S. 683, 15 Sup. Ct. 733. The judgment of this court was reversed solely upon the ground that it did not give the proper effect to the judgment of the state court of Idaho establishing priority in favor of the Last Chance location. Upon the third trial of the law case in the circuit court, judgment was rendered in favor of the Last Chance Company for its costs. Writs of error were sued out of this court both by the plaintiff and the defendant Republican Mining Company to have that judgment reviewed, and resulted in its affirmance. Mining Co. v. Sweeney, 24 C. C. A. 578, 79 Fed. 277. Both the district and circuit judges being absent from the district at the time of the filing of the bill in equity, it, together with certain affidavits, was presented by the complainant to Justice Field, of the supreme court, who thereupon made an order that the

90 F.—2

defendants appear before the court at its court room in Boise City, Idaho, on the 5th day of October, 1891, at 10 o'clock a. m. of that day, and then and there show cause why the preliminary injunction prayed for should not issue; and further granting the complainant's application for a restraining order pending such hearing, upon its giving a bond, with two good and sufficient sureties, to be approved by the clerk of the court, in the penal sum of $20,000, securing the defendants to the suit against all loss or damage which might result from the issuing of the restraining order, if it should be finally determined that the same was improperly issued, or that might be awarded to them by reason of the granting of the restraining order. The bond thus required was executed by the Tyler Mining Company, and by H. B. Eastman, Alf. Eoff, James A. Pinney, and George Ainslie as sureties, and, being approved by the clerk of the court, the restraining order went into effect.

At the time designated in the order to show cause the parties appeared before the court,—the district judge presiding,—with their counsel, and, after a hearing of the matter, the court, on the 9th day of October, 1891, ordered:

That the restraining order "be continued against said Last Chance Mining Company as a temporary injunction pending the trial of the cause, or until otherwise ordered by the court or judge, with the following modifications, to wit: The said Last Chance Mining Company may resume and continue work upon its said Last Chance Mine, and at any place within the limits of its boundary lines projected vertically downward; that all such work shall be done in the usual and ordinary course of mining, in an economical and miner like manner, keeping in view the proper development, the benefit, and preservation of the property; that all ores extracted by such workings shall be stored at some convenient place upon the mine, or they may, as fast as extracted to the amount of the ordinary shipping lot, be shipped and sold, and the proceeds thereof deposited in the First National Bank at Spokane Falls, state of Washington, subject to the regulations hereinafter defined; that, for the purpose of assisting in the enforcement of this order, a competent person shall be appointed as an officer and agent of this court, whose duty it shall be to make such frequent visits to said Last Chance Mine as he shall deem necessary to keep himself fully advised of all the working operations thereof, and observe and report to the court any violation of this order in such operations, and examine all the accounts covering the expenditures and the receipts of such mining operations; that he shall make such arrangements with said defendant concerning the shipping and sale of the ores as he deems necessary to preserve the proceeds thereof as directed by this order, and to that end may require the ores to be shipped jointly in his and defendant's (Last Chance Mining Co.'s) names, and the proceeds deposited in said bank in their joint names; that he shall make arrangements by which, under his supervision, sufficient of such proceeds may be drawn from said bank, from time to time, to meet and pay the actual and necessary working expenses of such mining operations, and all remaining proceeds shall remain in said bank until the court or judge thereof shall direct such officer in the disposition to be made thereof; that said Last Chance Mining Company shall at all times permit such court, officer, or agent to visit and inspect all parts of said mine and its workings, to examine all the accounts, books, and all transactions, as fully as though he had full charge of all such mining operations, and furnish him a copy of all such accounts when he shall demand them."

The order named F. R. Culbertson as such officer of the court; and further provided that the Last Chance Company should within 15 days, or within such time as the parties may agree upon, or the

officer direct, proceed to remove the water from the workings of the Last Chance Company, in order that the same may be examined by the complainant, its witnesses, surveyor, and counsel; and also provided:

"That, at any time the parties affected by this order may agree upon modification hereof, they may act upon such modification, without procuring the formal order of the court approving the same, but no such modification shall be acted upon until the same shall be reduced to writing, and signed by their respective counsel of record; also, it is ordered that a copy of any such modifying agreement must be transmitted to, and filed by, the clerk of this court."

In February, 1892, the first trial of the law action having resulted in a decision in favor of the defendants, the court, on the 9th day of that month, entered this order:

"Ordered that said restraining order be continued as to the defendants the Idaho Mining Company and the Republican Mining Company, and that the same be dissolved as to the defendant Last Chance Mining Company."

On the 6th day of March, 1893,—the second trial of the law action in the circuit court having resulted in favor of the plaintiff,—the court entered this order:

"In this case it is ordered that the injunction heretofore granted by Justice Field be continued as granted by said justice pending the litigation."

The third trial of the law action having resulted in a judgment that the plaintiff recover nothing against the Last Chance Mining Company, which was the principal defendant, that company in May, 1895, upon a petition setting out the various restraining and injunction orders above mentioned, and setting out "that the bond given by the complainant upon the granting of the injunction aforesaid, on the 1st day of September, 1891, became inoperative and void after the dissolution of said injunction, on the 9th day of February, 1892, and is not operative or effectual as to the injunction granted by this court on the 6th day of March, 1893; that the complainant has never given any bond in support of said injunction so granted on the 6th day of March, 1893,"—asked for a dissolution of the injunction ordered on the 6th day of March, 1893, for the failure on the part of the complainant to give a bond. This petition coming on to be heard, the court, on May 27, 1895, made this order:

"It appearing that on March 6, 1893, it was ordered that the injunction heretofore granted by Justice Field be continued as granted by said justice pending the litigation, and it also appearing that it was not then provided for a renewal of the bond before given by the plaintiff, the Tyler Mining Company, and that none has since been given by said plaintiff company, it is now, upon the motion of defendant the Last Chance Company, ordered that the said plaintiff, the Tyler Mining Company, prepare and file with the clerk a good and sufficient injunction bond in the sum of twenty thousand dollars, and that the same be done with all convenient speed, and that the same be submitted to the counsel for the Last Chance Mining Company before being filed with the clerk."

The bond thus required not having been filed, on June 15, 1895, the judge made an order requiring the Tyler Company to show cause, at a designated time and place, "why the injunction heretofore granted against the respondents should not be discharged forthwith, unless

before that day an injunction bond in the sum of twenty thousand dollars be made and filed as heretofore by me ordered to be done"; and on the 28th day of June, 1895, the bond not having been filed, and the Tyler Company having failed to show any cause against it, an order was entered "that the restraining order now existing against the defendants be and is dissolved."

No other proceedings were had or taken in this suit prior to May 26, 1897, on which day the cause was referred to a special master in chancery to take the testimony and report the same, with his findings, to the court. The testimony was so taken, and the master reported it, together with his findings. The latter are to the effect that the issues involved in this suit were conclusively determined in favor of the complainant, as against the defendants Idaho Mining Company and Republican Mining Company, by the judgment of the circuit court made and entered on the 3d day of April, 1896, in the law action, as to all the property in controversy, and as to any vein having its apex within the surface lines of the Tyler claim, found between vertical planes drawn downward through the extended end lines of that claim; that by the same judgment the issues involved in this suit were conclusively determined against the complainant, and in favor of the defendant Last Chance Mining Company, as to all the property in controversy within or beneath its surface lines, and having its apex therein, found between vertical planes drawn downward through its end lines extended, and as to the ore taken therefrom; that by the judgment in the law action the priority of location of the Last Chance claim over the Tyler claim is established; that the extralateral rights of the Tyler claim cease where the vertical plane drawn downward through the north side end line of the Last Chance claim is encountered; and that the Last Chance claim has the extralateral right to follow its ledge to the westward indefinitely upon a plane drawn on its end lines, which end lines are those that intersect the ledge in its course, and were originally located as side lines.

The evidence in the case given before the master, and by him reported to the court below, sustained these findings, and, upon exceptions thereto filed by the complainant, they were sustained by the court. The reasons for these conclusions will be found fully stated in the opinions heretofore referred to. In brief, they are these: Inasmuch as the Republican, Skookum, and Last Chance Fraction claims were located subsequent to that of the Tyler Company, and inasmuch as the vein having its apex within the surface lines of the Tyler location passed through its end lines, that company had the extralateral right conferred by the statute of the United States to follow it in its dip downward, as against any and all subsequent locators, until the planes drawn downward through its end lines, indefinitely extended, are encountered; but inasmuch as the location of the Last Chance claim was prior in time to the Tyler location, and inasmuch as, in point of fact, the vein having its apex within the surface lines of the Last Chance location is shown to be the same vein as that having its apex within the surface lines of the Tyler claim, and in its course passes through

the side lines of the Last Chance location, those side lines became the true end lines, and entitled the prior locator to follow the vein in its dip outside of its original end lines, but really side lines, indefinitely, until the planes drawn downward through its true side lines, extended indefinitely in their own direction, are encountered.

The suggestion of counsel for the appellant that the Last Chance Company, by its pleadings, disclaimed all interest in the vein in question, underneath the surface of the Republican and Last Chance Fraction claims, is not supported by the record. The Last Chance Company did disclaim any interest in either of those claims, but, inasmuch as the vein in question has its apex within the surface lines of the Last Chance location, and in its dip under the true side lines of the Last Chance location passes under the surface of the Republican and Last Chance Fraction claims, it is, in its descent, as much a part of the Last Chance location as if entirely within its surface lines. It constitutes no part of the Republican or Last Chance Fraction claims, and therefore, in disclaiming any interest in those claims, the Last Chance Company did not thereby disclaim any interest in the vein.

The master also found the defendant Last Chance Company entitled to damages and costs by reason of the injunction, the amount of which he fixed at $14,000, and that the obligors, Eastman, Eoff, Pinney, and Ainslie, on the bond given under the restraining order made in September, 1891, were liable thereon for those damages. Exceptions were filed on behalf of the complainant to these findings, and, except as to the amount, were overruled by the court. The court reduced the amount to $9,418, for which sum, with interest thereon at 7 per cent. per annum from October 5, 1897, it gave judgment against the complainant and its bondsmen, the latter of whom were not parties to the suit. The present appeal is by the complainant and the bondsmen.

On behalf of the sureties on the bond, it is contended that no decree could be rendered against them because they were not parties to the suit; in support of which position Bein v. Heath, 12 How. 168, is cited and relied on, in which case Chief Justice Taney made this remark:

"A court proceeding according to the rules of equity cannot give a judgment against the obligors in an injunction bond when it dissolves the injunction. It merely orders the dissolution, leaving the obligee to proceed at law against the sureties, if he sustains damage from the delay occasioned by the injunction."

In the case of Russell v. Farley, 105 U. S. 433, 445, the court reviewed the case of Bein v. Heath, as well as the decision of Mr. Justice Curtis in Merryfield v. Jones, 2 Curt. 306, Fed. Cas. No. 9,486, and said:

"Upon a careful examination, we are not satisfied that they furnish any good authority for disaffirming the power of the court having possession of the case, in the absence of any statute to the contrary, to have the damages assessed under its own direction. This is the ordinary course in the court of chancery in England, by whose practice the courts of the United States are governed, and seems to be in accordance with sound principle. The im-

position of terms and conditions upon the parties before the court is an incident to its jurisdiction over the case; and, having possession of the principal case, it is fitting that it should have power to dispose of the incidents arising therein, and thus do complete justice, and put an end to further litigation. We are inclined to think that the court has this power, and that it is an inherent power, which does not depend on any provision in the bond that the party shall abide by such order as the court may make as to damages (which is the usual formula in England), nor on the existence of an express law or rule of court (as adopted in some of the states) that the damages may be ascertained, by reference or otherwise, as the court may direct; this being a mere appendage to the principal provision requiring a bond to be taken, and not conferring the power to take one, or to deal with it after it has been taken. But, while the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet, if it has that power, it is in its discretion to exercise it or to leave the parties to an action at law. No doubt, in many cases, the latter course would be the more suitable and convenient one."

Since the intimation in Russell v. Farley it has been acted on by the federal courts in at least three cases. Lea v. Deakin, 13 Fed. 514; Coosaw Min. Co. v. Farmers' Min. Co., 51 Fed. 107; Lehman v. McQuown, 31 Fed. 138. See, also 2 Beach, Mod. Eq. Prac. § 770. Whether or not the bondsmen are entitled to notice is a question not raised by the assignments of error.

But for what did the bondsmen in the present case become liable? The bond was executed, as is expressly recited on its face, to secure the defendants to the suit in which it was given against all costs and damages which might be awarded to it in case the restraining order of September, 1891, should be finally determined to have been improperly issued. That order enjoined the defendants to the suit from working in or on any vein, lode, or ledge having its apex within the surface ground of the Tyler Company, and "from doing any work in the underground workings of the defendants, or any of them, at any point west of a line projected southerly from the southeast corner of said Tyler surface claim, and drawn downward perpendicularly through the earth from that point, or taking any ores therefrom, until the further order of this court, and from in any way interfering with any works, drifts, ·or excavations of said Tyler Company west of said line, either on the surface or beneath the surface"; and ordered "that, as to any and all ores heretofore mined in the space heretofore specified, by you, said defendants, or any of you, and not removed from said premises, you desist and refrain from removing or appropriating, but that you permit the same to be and remain thereon until otherwise ordered by the court." The sureties upon the bond obligated themselves to pay any damages, not exceeding $20,-000, that might be awarded the defendants to the suit by reason of such restraining order, provided it should be finally decided that the order was improperly issued. The consideration of the bond was the cessation of the work, and desisting from removing or appropriating the ore specified in the restraining order. That obligation could not be added to, nor, indeed, changed, by either party to the suit, nor by the court itself. That sureties are entitled to stand upon the strict letter of their contract is thoroughly well

settled.    In Miller v. Stewart, 9 Wheat. 680, 701, Mr. Justice Story said:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by implication, beyond the terms of his contract.    To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit.    He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal.    And courts of equity, as well as of law, have been in the constant habit of scanning the contracts of sureties with considerable strictness."

See, also, Pickersgill v. Lahens, 15 Wall. 144; High, Inj. §§ 1636, 1638, 1677.    When, therefore, the court, on the hearing in October, 1891, modified the restraining order by permitting the resumption of work under certain specified conditions, it did something which it undoubtedly had the power to do, and which was, perhaps, eminently wise to be done, but for which the sureties upon the bond given upon the issuance of the restraining order in no manner obligated themselves.    The court did not require any other or further bond at that stage of the suit, nor was any other bond at any time given on behalf of the complainant.

The only items of damage found by the master to have been sustained by the Last Chance Company between the time of the going into effect of the restraining order and its modification, on the 9th day of October, 1891, were certain costs incurred by it under the rule to show cause, fixed by the master at $547.50, and allowed by the court below, and certain expenses incurred by the Last Chance Company in the preservation of the property during the time the order as originally granted was in force, the amount of which was fixed by the master at $1,040, and reduced by the court below to $600.    We see no error in the ruling of the court in respect to these items; but they are the only items of damage for which the appellant bondsmen are liable, as all of the others were sustained by the Last Chance Company under orders of the court for which these bondsmen in no manner obligated themselves.

The appellant company contests the item of $3,754.50 incurred by the Last Chance Company in pumping water from and cleaning out its levels under the order of the court made at the instance of the Tyler Company, so as to admit of inspection by its officers, attorneys, and witnesses in preparing for the trial of the suit.    It is not claimed that no charge therefor should have been allowed, but it is contended that the work was continued longer than was necessary.    To this objection the court below answered:

"I do not doubt that it was unnecessary to so long keep these levels open for inspection; all necessary examination should have been made in a short time.    I had supposed that it was necessary to keep the water out, that the mine might be worked as permitted by the order of October 10, 1891, but it seems that the defendant continued to keep it out only because so ordered. As the complainant procured this for its own benefit, it should have looked to it that its witnesses make a speedy examination, and then have had the pumping stopped, as it easily might.    Instead, it seems to have taken its own time, and have its witnesses make their examination from time to time as convenient.    The complainant, and not the defendant, must pay for it."

In this we see no error, nor error in any other ruling of the court below in respect to the costs and damages allowed against the appellant company. The cause is remanded, with directions to the court below to modify the judgment in accordance with the views above expressed.