[No. 4363.]

The Jefferson Mining Co. v. The Anchoria-Leland Mining and Milling Co.

1.  Mines and Mining—Patent.

Where a patent is issued to a mining claim in pursuance of an application regularly made, it is conclusive against the owner of a conflicting location who failed to protest the application for patent.

2.  New Trial—Surprise.

A motion for new trial on the ground of surprise is insufficient in the absence of a showing that the mover would be able, at a second trial, to fortify or strengthen its case as made upon the first.

3.  Mines and Mining—Discovery Veins—End Lines.

In the location of a mining claim, the legal end lines of the discovery vein are the end lines of all veins within the surface boundaries with respect to extra-lateral rights.

4.  Mines and Mining—Extra-Lateral Rights.

The extra-lateral rights of the locator of a mining claim relate to that part of a vein which, on its dip, lies outside of the side lines of the location within whose surface lines the apex of the vein appears, and not to any part of such vein which lies wholly within planes extended downward coincident with the surface boundaries.

5.  Same.

The end lines of a mining claim define the extra-lateral rights of the locator, and they must be straight and parallel lines.

6.  Mines and Mining—Conflicting Claims.

Where two conflicting lode locations each have a portion of the apex of the same vein, and there is a conflict with respect to the dip rights within the surface lines of the two locations, the senior location must prevail.

*Appeal from the District Court of Teller County.*

The Anchor and the Mattie L. are both patented lode mining claims and, as originally located, over-

lapped on the surface as shown by the accompanying diagram. The appellee, plaintiff below, The Anchoria-Leland Mining and Milling Company, is the owner of the Anchor, and The Jefferson Mining Company, appellant and defendant below, owns the Mattie L. claim. The Anchor went first to patent October 5, 1894, without adverse or protest by the owners of the Mattie L., and the patent includes the entire surface in conflict. A patent was issued for the Mattie L. November 3, 1896, in which the conflicting surface ground is expressly excepted from the grant. The Mattie L., as actually located, is across, instead of along, the course of the discovery vein, as subsequent developments of the claim show, so that what its locators believed to be, and so designated as, its end lines, are in law its side lines, and its side lines are its end lines, so far as concerns extra-lateral rights. The Anchor location was along the course of its discovery vein, so that its located end lines are the legal end lines for all veins that have their apex within its boundaries. The relative positions of the two locations and the patented area of each and the segment of the vein in controversy are shown with sufficient accuracy by the following diagram:

There is no material conflict in the testimony. The case was tried by the court without a jury upon an agreed statement of facts which was supplemented by documentary evidence and oral testimony produced by both parties. From the agreed statement, in addition to the facts already recited, it appears that what is called in the record a secondary vein, as distinguished from the discovery vein, and delineated on the diagram as a-b, enters the exterior boundaries of the Mattie L. across the easterly boundary line thereof about 510 feet southerly from Corner No. 1

of that location, and thence continues, substantially parallel with the discovery vein (which is near the northern boundary), on a southwesterly course across its patented surface, and thence across the Anchor claim, entering it at the north, and departing from it at the south, side line. This vein has a dip to the southeast, and the ore in controversy is situated in that segment of the vein a-b under the surface of the Anchor claim and within vertical planes drawn downwards through its side and end lines.

This vein a-b has a portion of its apex within the patented surface of each, and the outcrop appears throughout its entire course across both, of the locations. In following this vein on its dip, the owners of the Mattie L. (The Jefferson Mining Company) ran a drift under the north side line of the Anchor lode and within the parallelogram c, x, e, f, in which are found the ore bodies in controversy, and began to extract and remove ore from such segment of the vein, whereupon this action was brought by the Anchoria company, as the owner of the Anchor claim, to restrain the Jefferson company, the owner of the Mattie L., from continuing such work. Further reference is made in the opinion to the evidence introduced by both parties supplementing the agreed statement of facts.

The court made findings of fact in favor of the plaintiff company, establishing the seniority of the Anchor claim, and permanently enjoined defendant from removing any ore lying beneath the surface of the Anchor claim and within vertical planes drawn downwards through its side lines and end lines.

Mr. D. P. HOWARD and Messrs. MORRISON & DE SOTO, for appellant.

Messrs. GUNNELL, CHINN & MILLER and Messrs. WOLCOTT, VAILE & WATERMAN, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

The positions taken by the parties may thus be stated: Appellant's contentions are, *first*, that, in law and in fact, the Mattie L. is senior to the Anchor and, therefore, entitled to the ore in controversy because of its priority under the doctrine governing what Mr. Lindley calls its "intra-limital" rights; *second,* that, regardless of the question of seniority, as to the secondary vein a-b the Mattie L. has extra-lateral rights southerly on the dip of that vein between what its locators considered its parallel side lines, but which, in law, are parallel end lines, and this covers the segment in dispute; *third,* that the Anchor claim, although it has within its exterior boundaries a portion of the apex of this particular vein, is not entitled to the ore in controversy within the parallelogram c, x, e, f, but the same belongs to The Jefferson Mining Company, the owner of the apex of the vein a-b, northeasterly from x. Each of these propositions is controverted by appellee, and we shall discuss them, but not in the order pursued by counsel in their briefs.

It is to be observed again that a-b is not the dis-covery vein of either location, but the parties seem to agree that, under the facts of this case, their respect-ive rights thereto, whether "intra-limital" or extra-lateral, are not different from what they would be were both locations based upon it as such.

1.  In one branch of the argument of appellant's learned counsel, they say that the question as to which is the senior location is the vital one in the case. This is so because there are surface outcroppings of the same vein within the boundaries of two lode mining claims which conflict on the surface. In such circum-stances appellant asserts, and appellee concedes, that

the claim first located necessarily carries the right to work the vein, and they both cite and rely upon: *Argentine M. Co. v. Terrible M. Co.*, 122 U. S. 478; *Tyler M. Co. v. Sweeney*, 54 Fed. 284; *Last Chance M. Co. v. Tyler M. Co.*, 61 Fed. 557; S. C. 157 U. S. 683; *Tyler M. Co. v. Sweeney*, 79 Fed. 277, 279.

In the last case, it was said that the ore body in dispute is on the dip of the lode or vein within the extended vertical planes of the end lines of the Tyler claim, and also within the side lines of the Last Chance claim, and on the dip of the vein as it passed through that claim, and it was there said that "the question as to which claim was first located necessarily determines the rights of the respective parties." Applying this principle to the present case concretely, it may be said that the ore in controversy here is on the dip of the lode a-b between the extended vertical planes of the legal end lines of the Mattie L. claim. It is also within the side lines of the Anchor claim, and on the dip of the vein as it passes through that claim. If the reasoning and conclusion in the Tyler-Sweeney case, *supra,* are right, and both parties here agree that they are, then it seems logically to follow that the senior location is entitled to the ore in controversy. It may be that the facts of this case differentiate it from those cited, and that the principle therein established does not apply here. And while it may not be necessary for us to rest our decision solely upon the question as to the seniority of the respective locations, yet as both parties deem it vital, we first inquire, which is the older location?

These claims overlap on the surface. The Anchor applied for, and first received, its patent, and no protest or adverse was made thereto by the owners of the Mattie L. The United States statute governing such applications provides for ample notice, which is equivalent to a summons in a judicial pro-

ceeding, and he who fails to heed it has no right to complain that his rights are concluded by it; and if, in such a case, a patent is issued in pursuance of an application regularly made, all persons are concluded. Had the owners. of the Mattie L. protested the application for patent of the Anchor and brought their suit in support of such adverse claim and the judgment of the court in which the suit was pending had been in favor of the Anchor, this would have been a conclusive determination that the latter is the senior location. Such a judgment of the court would be no more conclusive than the determination by the officers of the land department, in the absence of such protest, that the Anchor was entitled to a patent for all of the territory within its surface boundaries, including the strip covered by both locations. *Last Chance M. Co. v. Tyler M. Co.,* 157 U. S. 683; *Bunker Hill, etc., M. & C. Co. v. Empire State, etc., Co.,* 109 Fed. 538. It may be true, as appellant contends, that, to protect the apex rights of such subsequent locator, no protest is necessary where the junior location is made on the apex of a vein on the dip of which the senior patented location is based, and there is no surface conflict; but in this case the Anchor senior location has a portion of the apex of the same vein, and there was a conflict in the surface between the two locations, and the rule invoked by both parties is applicable to the present case.

Upon the trial, however, appellant, over the objection of appellee, was permitted to go behind the patents to introduce evidence upon the question of the date of the location of the respective claims, since the patents on their face do not disclose the dates of such location, and to rebut this testimony appellee introduced oral testimony. Appellant, therefore, cannot complain if, from this showing, as well as from the adjudication of the officers of the land department

in granting a patent to the Anchor claim, which we hold conclusive, it appears that the Anchor is the senior location. It was a perfected mining location not later than the 10th of September, 1891, and the Mattie L. does not relate back farther than the 14th of October of the same year, because it did not have a valid discovery until that time, and until after the location of the Anchor was made. It is true that the trial court disregarded all the evidence, documentary and oral, produced at the trial with respect to the date of location of these claims, except that pertaining to the patents themselves, apparently basing its decision solely upon the effect of the patent proceedings; but if the other evidence admitted, but not considered, is competent or material to the issue of priority, it quite conclusively shows the seniority of the Anchor location. The complaint of appellant that the trial court improperly refused to grant it a new trial on the ground of surprise in the attack made by appellee upon the discovery of the Mattie L., if. at all important here, is wholly untenable for the reason that the proof as to the alleged surprise is altogether insufficient under our practice; and even if appellant were surprised, there is no showing that, in case of a second trial, it would be able to fortify or strengthen its case as made upon the first.

2. The second contention of appellant is that if the seniority of the Anchor claim be admitted, nevertheless the ore body in dispute belongs to the Mattie L. This is the argument: The discovery vein of the Anchor crosses both end lines of that location. Its dip right thereon is to follow the vein at right angles to the side lines, and its owner may not follow any vein, either discovery or secondary, on the dip at any other angle. Referring again to the diagram, counsel say that the owner of the Anchor may follow the discovery vein y-z wherever found within the

exterior lines of the survey and upon its dip between the planes p-q, being the planes of the end lines, and may follow the secondary vein a-b between vertical planes drawn, parallel to the planes of the end lines, at the points x and h where the vein a-b departs from the side lines of the location, and within such planes, represented by the parallelogram x, e, h, g, may follow the vein a-b to its south side line either on its strike or dip at any point west of x, but may not follow it east of x because the apex of the vein a-b between x and a belongs to the owner of the Mattie L. claim, which, by its patent, has the right to follow such vein on its dip between vertical planes drawn parallel to and coincident with the legal end lines (that is, the located side lines) of the Mattie L. location, and this includes the vein under the surface of the Anchor within the parallelogram c, x, e, f.

It is now settled law that the legal end lines of the original, or discovery, vein are the end lines of all veins within the surface boundaries with respect to extra-lateral rights. While appellant expressly disclaims that the present case involves the doctrine of extra-lateral rights, nevertheless, in argument its counsel virtually asks to have the principle of that rule applied to the facts. That doctrine does not fit the facts of the case, for the legal question is one strictly of "intra-limital" rights. Neither can we, by analogy, apply to the facts the principles of that doctrine, as we proceed to show.

The ore bodies in dispute within the parallelogram c, x, e, f, except the triangle k, e, n, to which appellant can make no claim, are within the surface lines of the Mattie L., and the entire parallelogram is wholly within the surface lines of the Anchor. The doctrine of extra-lateral rights refers to that part of a vein which, on the dip, lies outside of the side lines of the location within whose surface lines the apex of

the vein appears, and not to any part of such vein, either the outcrop or segments on the dip thereof, which lie wholly within planes drawn downwards coincident with its surface boundaries. In other words, the extra-lateral rights of a locator of a lode mining claim do not attach until after, in pursuit of his vein on its dip, he crosses the side lines of his location. Here, as we have said, in pursuing the vein a-b from its apex, which is within the surface lines of the Mattie L., thence downward on its dip, its owner has encountered a segment thereof inside the side lines, and also the end lines, of the Mattie L., which is also within the surface lines of the senior Anchor location. This segment, too, has a part of the apex of the same vein within the surface boundaries of the Anchor. It will not do to say that such segment is outside of the side lines of the Mattie L., because it is also within the boundaries of the senior Anchor, and though the Mattie L. does not own the conflicting ground, still this very ground is actually physically within its surface boundaries. The fact that it belongs to another person, and is within the surface boundaries of another location, does not change its position on the ground with reference to legal boundary lines of the respective locations.

To make the point, if possible, still clearer, suppose that the Mattie L. patent had included all the ground which its original survey encompassed. This would embrace the strip in dispute patented by the Anchor. In other words, suppose the Anchor was out of the case entirely, and we were required to ascertain the nature and extent of the rights of the Mattie L. to all the veins found within its surface lines. On the assumption that it has the apex of the vein a-b, then the rights of the locator are defined by section 2322, revised statutes of the United States. The property rights conferred by a lode location there-

under are twofold (1 Lindley on Mines [2 ed.] § 549) :
"intra-limital" and "extra-limital," or extra-lateral.
The first embraces all within its boundaries down to
the center of the earth; the second, while depending
for its existence upon something within such bound-
aries, may nevertheless be exercised, under certain
conditions, beyond those boundaries. Now, the seg-
ment of the vein in dispute here is wholly within the
surface lines of the Mattie L. as they were run upon
the ground. The property rights of the owner thereto
are therefore strictly "intra-limital," and in no sense
referable to the law governing property rights of
the second class. There would seem to be no doubt
of this conclusion in the hypothetical case. Instead
of the supposed case, however, we have one where two
locations cover the same ground, and where the strip
common to both is expressly excepted from the Mattie
L. patent, because it had been previously segregated
from the public domain and conveyed by the United
States to the owner of the older Anchor location.
Neither this exclusion from the Mattie L. patent of
the disputed strip, nor the projection of the Anchor
into its territory, nor both combined, operate to
change the boundary lines of the Mattie L. location.
They are still to be traced on the ground as they were
first run, and the ground in controversy is just as
much within the existing surface lines, both side
lines and end lines, of the Mattie L., as when such
lines were first laid. Manifestly, therefore, now, as
always, whatever property rights, if any, which the
owner of the Mattie L. has in the veins found in this
particular area, are derived, and must spring, from
section 2322 of the Revised Statutes, and that section
confers no right whatever if such ground has been
previously patented to another.

It is not logical to hold that the extra-lateral
rights with respect to this disputed strip are to be

defined as though it was territory beyond the Mattie
L. side lines, and within the planes of its end lines,
when it so clearly appears that it is wholly within
the surface lines of that claim, though covered by a
senior conflicting location.   The law does not require
that the bounding lines of a location be laid wholly
upon its own territory, and so as to include only the
surface ground actually belonging to it, but they
may be laid along, or across, other and senior loca-
tions belonging to another, though, of course, the
prior rights of the latter may not thereby be injur-
iously affected.   The courts cannot make a location
or change the boundaries as made by the locator him-
self.   But if the Mattie L. was permitted to draw
in its boundaries so as to include therein only the
ground actually belonging to that location, and so as
to exclude all that belonging to the Anchor, the posi-
tion of the appellant would not be strengthened.   On
the contrary, it would be left without the vestige of
an extra-lateral right.   For then the westerly legal
end line (the located westerly side line) of the Mattie
L. would be coincident with the northerly side line,
the easterly end line, and the southerly side line of
the Anchor claim for a certain distance, and thus
would not be a straight, but a broken line, and the
westerly end line of the location, as thus laid, would
not be parallel with its easterly legal end line; and
from a claim thus irregularly located, extra-lateral
rights are withheld.

The law is that it is the end lines alone, not they
and some other lines, which define the extra-lateral
right, and they must be straight lines, not broken or
curved ones.—*Walrath v. Champion Co.*, 171 U. S.
293.

To hold that the disputed strip is, legally speak-
ing, outside the side lines of the Mattie L. location,
would be not only contrary to the physical fact, but

would be putting a premium on an unlawful act. It is clear that if the locators of the Mattie L. had observed the statute and not attempted to include within their location previously located ground, and had so drawn its westerly legal end line as to take in only public domain, it would have acquired, by such compliance with the law, no right whatever to the ore bodies now claimed. And while, if the Anchor owner made no objection, the boundary lines of the Mattie L. might be laid on the surface of the Anchor, still the latter's superior right might not thereby be jeopardized. In neither of these cases could extralateral rights be asserted. Can it be said that because the Mattie L. has so run its surface lines as to include therein property already located by another, that it, thereby, has enlarged its rights beyond what it would have secured had it obeyed the provisions of the statute under which its rights are obtained, and by which they are defined? In other words, may a locator of a mining claim acquire greater rights by disobeying, than by observing, the statutes of the United States, from which all his rights are derived? Until a higher authority so commands, we shall not so decide.

Extra-lateral rights, as to the ore bodies in dispute, might be exercised if they are outside the side lines of the Mattie L. But this situation can exist only if its westerly legal end line be drawn in to exclude the conflicting territory. In that event, appellant may not go westerly beyond that boundary, for it could not, in pursuing its vein on the dip, pass beyond the planes drawn vertically through the end lines of its location. Such planes would constitute a barrier beyond which the owner of the Mattie L. could not go, and would exclude from the exercise of its extra-lateral right the easterly portion of the Anchor claim which is here in controversy.

The doctrine of extra-lateral rights, therefore, does not apply; neither does it, by analogy, fit this case. The "intra-limital" rights of the respective parties govern, and since those rights of the junior Mattie L. claim conflict with, and are interrupted by, the senior "intra-limital" rights of the Anchor, the latter prevails, as we have hereinabove said in discussing another contention of appellant.

Counsel rely chiefly upon *Colo. Cent. M. Co. v. Turck,* 54 Fed. 262, wherein it was said that where the apex of a vein passes out of the side line of a claim into an adjoining claim, the latter, though junior in date, gives to its owner the right to follow the vein on its dip underneath the senior location. That is the case most nearly in point, but it does not, in our judgment, apply to the facts of this case. Here, in the case at bar, the segment of the vein claimed by appellant has not on its dip passed out of the side line of the Mattie L. claim, but is wholly within its surface boundaries. In the Turck case the circuit court of appeals did not deny to a senior location so much of the vein underground as it had the apex of. That decision, as we understand it, so far as it is analogous to this case, was that one who locates upon the apex of a lode may within planes drawn through the end lines of the location follow the vein *outside* of its side lines and underneath the boundary lines of an adjoining proprietor, when the latter has no part of the apex, though he holds under a senior patent. But here, as we have said, the vein has not on its dip passed beyond the side lines of the junior Mattie L. location, but the ore body in question is wholly within the surface lines of the junior Mattie L., and also inside the surface lines of the senior Anchor, location. Necessarily, therefore, it seems to us that the senior claim has the right to it.

A fundamental error of appellant consists in the

attempt to apply the doctrine of extra-lateral rights to a case which is governed by the law of "intra-limital" rights; in seeking to apply the limitations which are applicable to outside parts of veins—that is, veins outside the side lines—to the parts of veins wholly within such lines. This we believe is contrary to section 2322, and opposed to the authorities hereinabove cited. Appellee is not here asserting extra-lateral rights to the secondary vein, but bases its claims thereto solely on the ground that it is the owner of the senior location and for that reason owns the ore found within its surface boundaries.

But if the doctrine of extra-lateral rights does govern, then by the decision in *Walrath v. Champion Co.*, 72 Fed. 978, the end lines, and no other lines, of the Anchor location bound its extra-lateral rights in the vein a-b; hence the owner of the Anchor would be entitled to all ores of such vein found within planes drawn downward through its end lines p-q, and would not be limited, as is attempted to be done here by appellant, by planes drawn parallel to the end lines at the points x and h. This case was affirmed by the supreme court of the United States under the same title, 171 U. S. 293, and as to this point was referred to with approval in *Montana M. Co. v. St. Louis M. & M. Co.*, 102 Fed. 430. We are aware that considerable criticism has been made of this decision. In *Ajax G. M. Co. v. Hilkey*, 31 Colo. 131, we decided that planes drawn parallel with the end lines and at points where the vein passed through the side lines of a location, bounded the extra-lateral rights. We so limited the rule because that was the extent of the claim made by the owner of the extra-lateral rights. But the supreme court of the United States has gone further and said that these bounding planes must be coincident with the planes of the end lines, and if this case demanded the application of that rule, it would

t3 our duty to follow it if we believed the facts of
this case are such as to bring it within the principle
there announced, notwithstanding the adverse criti-
cism of the decision by the learned author of Lindley
on Mines (2 ed), section 593 *et seq*. Its application
would give the ore bodies in dispute here to the
Anchor claim as the owner of the senior extra-lateral
right.

Our conclusion is that where there are two con-
flicting lode locations, each having a portion of the
apex of the same vein, and there is a conflict, as here,
with respect to the dip rights within the surface lines
of the two locations, the senior location must prevail.

To avoid, if possible, misunderstanding, we fur-
ther observe that, in this case, a portion of the second-
ary vein a-b is within the surface boundaries of the
senior Anchor lode, as the stipulated facts show. The
owner of that claim, to say the least, certainly owns
all the mineral of such vein within planes extended
vertically downwards coincident with its end lines
and side lines to the extent, at least, of the length of
the apex found within its surface boundaries. The
case has not been argued, certainly not exclusively,
upon the proposition that each of these parties owns
a definite portion of the ore found within the parallel-
ogram c, f, e, x, to each belonging such part of the
vein as it has the apex of, but, if it had been, there
is not sufficient *data* in the record to show what por-
tion, or how much, each party is entitled to, even if
we should hold that the Mattie L. owns such portion
of the ores within that parallelogram as it has the
apex of easterly of x. The case has been submitted
rather upon the proposition that each party owns
all the ores found within this parallelogram.

In thus disposing of this action, we have not
overlooked, though we do not pass upon, the conten-
tion of appellee that the Mattie L. can, in no circum-

stances, have any right, "intra-limital" or extra-lateral, to the secondary vein, a-b, because it is substantially parallel with the discovery vein and more than 300 feet distant therefrom, and under section 2320 such other vein is, therefore, excluded from the operation of the patent, though it may be within the surface lines of the claim as surveyed and located on the ground. There are other contentions by appellee which, in the view we have taken of the case, are not discussed.

In addition to the authorities already cited, we refer to the following, among others, which in principle uphold the conclusions here reached:—*Iron Silver Mining Co. v. Elgin M. & S. Co.*, 118 U. S. 196; *Del Monte M. & M. Co. v. Last Chance M. Co.*, 171 U. S. 55.

The judgment of the district court being in accordance with our conclusion, it is affirmed.

*Affirmed.*